113 N.J. Super. 582 (1970)
274 A.2d 614
IN THE MATTER OF THE ESTATE OF PARKER WEBSTER PAGE, DECEASED.
Superior Court of New Jersey, Chancery Division.
Decided December 23, 1970.
Mr. Coleman Burke for plaintiffs (Messrs. Burke & Schmid, attorneys).
Mr. Clyde M. Noll for defendant (Messrs. Bourne & Noll, attorneys).
HERBERT, J.S.C.
Parker W. Page died in 1937 and his will was probated with the Essex County Surrogate. By *583 paragraph Third of the will he left the residue of his estate in trust for his wife Nellie for life, and provided for remainders in the following words:
Upon her death I give, devise, bequeath and appoint the principal in equal shares to my daughters Helen Page Wodell and Lois Page Cottrell and if either of my daughters should then be dead to such persons and in such proportions as such daughter may by will duly admitted to probate legally appoint and in default of such appointment to such daughter's issue then surviving in equal shares per stirpes.
Nellie Page, the widow, died on April 14, 1970 at the age of 100. She was survived by the two daughters, Helen Page Halbach (named in Mr. Page's will as Helen Page Wodell) and Lois Page Cottrell. On April 19, 1970 Mrs. Halbach signed and acknowledged a document entitled "Disclaimer and Renunciation" which reads as follows:
TO THE SURROGATE OF THE COUNTY OF ESSEX, STATE OF NEW JERSEY:
I, HELEN PAGE HALBACH (formerly Helen Page Wodell), residing at 49 Forest Drive, Short Hills, New Jersey, do hereby irrevocably disclaim and renounce all my right, title and interest as a remainderman of the trust established by my father, Parker Webster Page, in Paragraph THIRD of his Last Will and Testament, dated January 12, 1935, and admitted to probate by the Essex County Surrogate's Court on February 10, 1937.
 Dated: April 19, 1970 HELEN PAGE HALBACH
 Helen Page Halbach
On April 30, 1970 Mrs. Cottrell signed and acknowledged a paper identical in all pertinent respects to the one executed by Mrs. Halbach.
The disclaimer and renunciation of Mrs. Halbach and that of Mrs. Cottrell were delivered on May 4, 1970 to Summit and Elizabeth Trust Company, the corporate trustee of Mr. Page's residuary trust, and on June 15, 1970 were filed with the Surrogate of Essex County.
The trustees of the trust created by paragraph Third of Mr. Page's will have brought this action for approval of *584 their accounts and in addition ask for a judgment determining the effect of the documents executed by Mrs. Halbach and Mrs. Cottrell and described above, and directing distribution of the trust assets.
Mrs. Halbach has two children and Mrs. Cottrell has three. These five are the only grandchildren Mr. and Mrs. Page ever had, and all of them are of age.
In Dare v. New Brunswick Trust Co., 122 N.J. Eq. 349 (Ch. 1937), a bequest of income from a small trust fund was rejected by the Salem Quarterly Meeting of the Society of Friends. Vice-Chancellor Sooy had this to say about the refusal to accept:
That a devisee or legatee cannot be compelled to accept a devise or legacy is definitely settled. See [1] Bogert on Trusts, vol. 1, §§ 171 to 173, and 1 Restatement, vol. 1, § 36 par. c. In re Howe's, 112 N.J. Eq. 17, and Olsen v. Wright, 119 N.J. Eq. 103, among the many cases that might be cited.
As to the time for renunciation or declining a legacy, the rule is that the rejection should be made promptly after the legatee has notice of the legacy, and while it is true that the legatee, being a remainderman, might be considered to have acted promptly if he gave notice after the death of the life tenant, still there is nothing that prevents the giving of such notice prior thereto. See Page on Wills § 1202. [at 351]
Page on Wills observes that testate succession depends upon the voluntary act of a testator in executing his will, and then comments:
As a part of this general theory of testate succession the devisee or legatee may prevent the passage of title to himself by renunciation, disclaimer and the like.
6 Bowe-Parker, Page on Wills, § 49.2 at 39 (1962), where many cases are cited, including Dare v. New Brunswick Trust Co., supra.
The only sensible assumption is that the daughters of Mr. Page learned the provisions of his will soon after his death. It thus becomes appropriate to ask whether they should *585 have renounced promptly after getting such knowledge even though Mrs. Page was then alive, and, as events proved, had many years ahead of her. My research, though not exhaustive, has not turned up any ruling that a remainderman's renunciation, to be effective, must occur within a reasonable time after learning that a will provides for him. The statement in Dare v. New Brunswick Trust Co. to the contrary has been quoted above. Clapp on Wills and Administration cites that case with approval for the proposition that a remainderman may wait until termination of a prior estate before accepting or rejecting benefits conferred upon him by a will, but must then act promptly. 5 N.J. Practice (3d ed. 1962), § 278 at 525. In Montclair National Bank & Trust Co. v. Seton Hall College of Medicine & Dentistry, 96 N.J. Super. 428 (App. Div. 1967), the court said in a different though somewhat related context,
Clearly there is a distinction between outright gifts of present interests with present enjoyment intended, and future interests, vested or contingent, with distribution not intended to be immediate. [at 437]
On this subject Page, op. cit., says:
If the interest is one which will not take effect in immediate possession, even if accepted, it is said that the remainderman and the like has the entire period during which the particular estate lasts, to determine whether he accepts or renounces. [§ 49.8, at 47, citing cases from Alabama, Missouri and New Hampshire.]
My conclusion is that Mrs. Halbach and Mrs. Cottrell, having acted very promptly after their mother's death, effectively disclaimed and renounced the remainders in trust provided for them by the will of their father.
The conclusion just stated leads to this question: In the light of the disclaimers should the will be construed to bring into operation the provisions for the issue of Mr. Page's daughters, as though the daughters had died before their mother? The will is silent about possible renunciation of *586 benefits by the daughters. Mr. Page did specify, however, that if a daughter predeceased him, the share such daughter would have taken if living should go to her issue, and he also specified  in language quoted above  that if either of his daughters, after surviving him, should die in the life-time of his wife, the share in question should pass to the deceased daughter's issue in default of testamentary appointment by that daughter. Thus he was explicit about the contingency of death, but not about the contingency of disclaimer.
The disclaimers have produced a situation much like the fairly common one in which a life tenant voluntarily surrenders a life estate that a testator, judging by the language of his will, thought would be ended only by the life tenant's death. The usual result in cases of that type is acceleration of the remainder and treatment of voluntary termination by the life tenant as if termination had occurred through death. A portion of Vice-Chancellor Buchanan's opinion in Bennett v. Fidelity Union Trust Co., 123 N.J. Eq. 198 (Ch. 1938), is especially pertinent here:
It is obvious that the question of when and to whom distribution is to be made is basically a question of what was the testator's intent in that behalf as expressed in his will. The testator intended that the wife should take an estate for her life (in one of the trusts it was an estate for life or widowhood), and that at the end of that life estate the corpus should go to those persons whom he specifically designated in that behalf. The widow, however, cannot be compelled to take the life estate  nor to keep it even if she does take it. If the life estate which he gave her should be refused, or subsequently given up, by her, her life estate is thereby terminated prior to her death. His intent that she should have the fund for life is thereby rendered nugatory. To whom is it then to go? Naturally it is to go to whomsoever and at such time as he has directed, in such circumstances, by his will. But what does his will specify in this behalf? In most cases, just as in the instant case, the will does not specifically provide for such a contingency. Most people  lawyers as well as laymen  think of a life estate as ending at the death of the life tenant and not otherwise. Most wills, therefore, specify that the distribution which is intended to be made after the expiration of the life tenant's enjoyment of the property shall be made "at" or `after the death of (the life tenant)'; and fail to contain any specific provision as to *587 what shall happen to the estate if the life tenant, prior to her death, refuses to have anything more to do with it. In the absence of such specific provision, the will must be searched for some implied provision  some indication of what the testator desires. If any such can be found, it will control. If nothing of that kind can be found, the court must needs dispose of the estate in some way, and hence makes such disposition as it thinks the testator would have made if he had thought about it. That disposition is the one which in the judgment of the court a testator would naturally make under those circumstances; and it is embodied in a general rule, laid down as being applicable and operative, if the will does not indicate a different intent.
It is the most natural presumption that a testator would desire the fund or estate to go, on the termination of a life estate by some cause other than the life tenant's death, in exactly the same way as if the termination had been caused by the life tenant's death. Hence such has been laid down as the rule where there is no different intent or desire on the part of testator evident from the will. Beideman v. Sparks, 61 N.J. Eq. 226, 47 A. 811, supra; Anthony v. Camden Safe, &c., Co., 106 N.J. Eq. 41, supra. [at 200-201]
Although the Bennett case held that vested remainders should be accelerated and Mr. Page provided only contingent interests for his daughters' issue, the distinction is not important. Both vested and contingent remainders are subject to acceleration. 3 Simes on Future Interests, §§ 756 and 757 at 232 et seq. (1963), where the author says, among other things:
It is interesting to note that, in a number of cases in this group, the courts definitely refused to consider distinctions between vested and contingent future interests. The whole notion seems to be that they are construing the words in the light of the renunciation, and that fact renders inapplicable ordinary rules of construction. The question which the courts profess to consider is not, is this technically a vested or a contingent remainder, but to whom would the testator have given his property in the absence of any life estate in the widow? Thus, in [*]Scotten v. Moore [5 Boyce 545, 93 A. 373 (Del. ch. 1914], the court, after observing that acceleration was based on presumed intention, said: `If the principle is based on the presumed intention of the testator, there need be no distinction made between vested and contingent remainders in its application.' Other cases have expressed the same idea in still more elaborate terms. [at 234]
Though Bennett v. Fidelity Union Trust Company, supra, dealt with distribution of trust funds following voluntary *588 termination of a life estate, and the cases collected in Simes, supra, are also of that type, principles that are equally applicable to the present problem clearly emerge. To ask how a testator would have disposed of his property if he had anticipated that his wife might reject or surrender a life estate is essentially like asking how a testator would have disposed of his property if he had anticipated that his daughters might disclaim remainders provided for them in his will. In both situations the real inquiry is addressed to the testator's intent.
In New Jersey we have strong and recent declarations that our courts should undertake to ascertain and carry out the probable intention of testators. A leading case is Fidelity Union Trust Company v. Robert, 36 N.J. 561 (1962). A subsequent comment by the Supreme Court about the significance of that case may be quoted:
The current view of probable intent to which this court is now committed was crystallized in Justice Jacobs' opinion in Fidelity Union Trust Co. v. Robert, supra (36 N.J. 561), following the ground-breaking decisions in In re Klein's Estate, 36 N.J. Super. 407, 415 (concurring opinion of Judge Clapp) (App. Div. 1955) and Bank of New York v. Black, 26 N.J. 276 (1958). The essence of this broader and more liberal approach to will construction, is found in certain key expressions in Robert. "* * * `when we say we are determining the testator's intent, we mean his probable intent.'" "* * * [I]n ascertaining the subjective intent of the testator, courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances * * *. So far as the situation fairly permits, courts will ascribe to the testator, those impulses which are common to human nature, and will construe the will so as to effectuate `those impulses'."`* * * [T]he court's endeavor is to put itself in the testator's position insofar as possible in the effort to accomplish what he would have done had he "envisioned the present inquiry'." (36 N.J., at pp. 564-566) "Since the goal is the ascertainment of the testator's probable intent in this particular will construction case, precedents involving the construction of other wills have no great force * * *." [In re Estate of Burke, 48 N.J. 50, 63 (1966)]
Neither Burke nor Robert involved disclaimer or surrender of a testamentary benefit but both cases did involve factual *589 situations which the respective testators had failed to provide for and those situations were held to be properly solved by construing the respective wills under the doctrine of probable intent and without resorting to the laws of intestacy. In Robert the court stressed the importance of the presumption against intestacy in any inquiry about probable intent by quoting as follows from In re Fabbri's Will, 2 N.Y.2d 236, 159 N.Y.S. 2d 184, 140 N.E.2d 269.
"A testator, by the act of the making of a will, casts grave doubt on any assumption that he expressly intends to chance dying intestate as to any portion of his property. Indeed, the law has taken cognizance of this teaching of common experience and crystallized it into a presumption, expressed in various terms, but requiring essentially that the courts favor a construction which avoids partial intestacy and adopt one which results in a complete disposition of the estate. Haug v. Schumacher, 166 N.Y. 506, 514-515, 60 N.E. 245, 246, supra; Lewis v. Howe, 174 N.Y. 340, 346, 66 N.E. 975, 977, 1101. This presumption against intestacy is particularly weighty where the gift, as here, is made out of the residuary estate. Matter of Hayes' Will, 263 N.Y. 219, 225, 188 N.E. 716, 718. The opinion in the Hayes case, 263 N.Y., at page 225, 188 N.E., at page 718, quotes the following forceful statement of the rule: `The idea of anyone deliberately purposing to die testate as to a portion of his estate and intestate as to another portion is so unusual in the history of testamentary disposition as to justify almost any construction to escape it. 2 Redfield on Wills (3d Ed.) 235.'" [2 N.Y.2d at 243, 159 N.Y.S.2d at 196, 140 N.E.2d at 273]
Mr. Page recognized that his daughters might not live to enjoy the remainders bequeathed to them. With that in mind he made provision for their issue. If he had contemplated that his daughters' enjoyment might be forestalled not by death but by their own disclaimers, would he have intended anything other than the same disposition of the trust property he had provided for expressly in the event of death? I think not. There is nothing in the will as a whole which even suggests a different answer.
The probable intent of Mr. Page, the testator, is clear: That any suggestion of a partial intestacy be ruled out; that the two children of Mrs. Halbach divide equally the share *590 which would have been hers if she had not disclaimed; and that the three children of Mrs. Cottrell divide equally the share which would have been hers if she had not disclaimed. As Professor Simes suggests in the sections from his work on future interests which are cited above, the will, in order to carry out this probable intent of the testator, is to be construed as though originally written to make the testator's bequests to issue of each of his daughters effective upon disclaimer as well as in the event of death.