Lois P. COTTRELL, Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 79–1842.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1980.

Decided Sept. 3, 1980.

Phillip H. Martin, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., argued for appellant; Kenneth L. Cutler, Minneapolis, Minn., on brief.

Helen A. Buckley, Atty., Tax Div., Dept. of Justice, Washington, D.C., argued, for appellee; M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Ann Belanger Durney, Washington, D.C., on brief.

Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY, McMILLIAN and ARNOLD, Circuit Judges, en banc.

ARNOLD, Circuit Judge.

This is a gift–tax case. The question is whether Lois P. Cottrell made a taxable transfer of property by gift within the meaning of 26 U.S.C. §§ 2501 and 2511 when she disclaimed her remainder interest created by her father's will. The Tax Court, 72 T.C. 489, found that a taxable transfer was made and determined a deficiency in the amount of $4,639,402.50. Because this case is indistinguishable in any material respect from *Keinath v. Commissioner*, 480 F.2d 57 (8th Cir. 1973), we reverse.

### I.

Parker Webster Page died testate on January 22, 1937, a resident of Essex County, New Jersey. He was survived by his wife, Nellie A. Page, and two daughters, Helen Page Wodell (later Halbach) and Lois P. Cottrell, the taxpayer in this case. The third paragraph of Mr. Page's will, which was admitted to probate in a New Jersey court shortly after his death, reads as follows:

If my wife, Nellie A. Page, survives me, I give, devise, bequeath and appoint all of said residue of my estate to my Trustees, hereinafter named, IN TRUST, to hold the same during the life of my wife Nellie A. Page and to invest and reinvest the principal and to apply the net income to

her use. Upon her death I give, devise, bequeath and appoint the principal in equal shares to my daughters Helen Page Wodell and Lois Page Cottrell and if either of my daughters should then be dead to such persons and in such proportions as such daughter may by will duly admitted to probate legally appoint and in default of such appointment to such daughter's issue then surviving in equal shares per stirpes.

Thus, all of the trust's net income was designated for the sole use of Nellie A. Page, the life beneficiary. In addition, the fourth paragraph of the will granted to the trustees the power to take from the principal up to $10,000 a year for the life beneficiary.

The taxpayer and her sister were appointed executors of the will on February 10, 1937. On February 23, 1944, the taxpayer irrevocably released the testamentary power of appointment granted to her under the third paragraph of the will, but reserved a partial power to appoint only to her spouse and descendents. The trust assets were distributed by the executors to the trustees on January 27, 1945, and from that date the taxpayer and her sister acted as trustees.[1]

Nellie A. Page died on April 14, 1970, at the age of 100. She was survived by her two children, the taxpayer and her sister. On April 30, 1970, the taxpayer executed a written disclaimer, which was filed in the probate court on June 15, 1970. It reads in full:

I, Lois Page Cottrell, of Stonington, Connecticut, do hereby irrevocably disclaim and renounce all my right, title and interest as a remainderman of the trust established by my father, Parker Webster Page, in Paragraph Third of his last will and testament dated January 12, 1935 and admitted to probate by the Essex County Surrogate's Court on February 10, 1937.

---

1. On December 16, 1965, the taxpayer and her sister appointed Summit and Elizabeth Trust Company to act with them as trustees, and the three co–trustees continued in that capacity until the termination of the trust.

At no time had the taxpayer received any income or principal from the trust.

The trustees filed suit for a determination of the validity of the disclaimer. The Superior Court of New Jersey held the disclaimer valid under New Jersey law:

Mrs. Halbach and Mrs. Cottrell, having acted very promptly after their mother's death, effectively disclaimed and renounced the remainders in trust provided for them by the will of their father.

*In re Estate of Page*, 113 N.J.Super. 582, 585, 274 A.2d 614, 616 (Ch.Div. 1970). The taxpayer's disclaimed remainder interest, then worth over ten million dollars, was distributed to her children under the third paragraph of the Page will.

The Commissioner of Internal Revenue determined that the taxpayer made a taxable transfer, and a deficiency of $4,639,-402.50 was assessed. The taxpayer filed with the Tax Court a petition for a redetermination, and the case was submitted on the pleadings and stipulated facts. The Tax Court agreed with the Commissioner, ruling that the taxpayer's disclaimer was not made within a reasonable time under Treas. Reg. § 25.2511–1(c), and thus constituted a taxable transfer. The taxpayer appealed to this Court.[2]

## II.

"The transfer of property by gift" is taxed under the Internal Revenue Code of 1954 regardless of whether the gift is "direct or indirect." 26 U.S.C. §§ 2501, 2511. In some circumstances, however, a transfer by way of an unequivocal disclaimer of a devised interest in property is not taxable. Under Treas. Reg. § 25.2511–1(c), a disclaimer is not a taxable transfer if four conditions are met: (1) The disclaimer must be permitted under local law; (2) the disclaimer must be made within a reasonable time after knowledge of the existence of the transfer to the disclaiming party; (3) the disclaimer must be unequivocal; and (4) there must have been no acceptance of

property by the disclaiming party before the disclaimer. Here, it is undisputed that the disclaimer was valid under New Jersey law, that it was unequivocal, and that the taxpayer accepted no property before she disclaimed her interest in the trust. The only question before us is whether the disclaimer was timely. If the event which triggered the running of the "reasonable time" period was the death of the testator, the disclaimer, filed 33 years thereafter, was untimely and ineffective. On the other hand, if the critical event was the death of the life beneficiary, the disclaimer was unquestionably timely, having been executed 16 days, and filed two months, thereafter.

*Keinath v. Commissioner*, 480 F.2d 57 (8th Cir. 1973) presented a strikingly similar fact situation and is controlling. The testator died in 1944 devising most of his estate to a trust. His wife was the life beneficiary, and upon her death the principal was to be divided between the testator's two sons, John Jr. and Cargill. The sons served as co–trustees until John Jr. died in 1960, and after that Cargill served as the sole trustee. The parties agreed that the will gave Cargill a vested remainder in one–half of the trust subject to divestment only if he should predecease his mother, the life beneficiary. Cargill at no time accepted any income or principal from the trust. The life beneficiary died March 28, 1963. On May 20, 1963, Cargill signed an unequivocal disclaimer of any interest in the trust, and the disclaimer was filed in a Minnesota state court on September 6, 1963. That court held the disclaimer valid and timely. The Commissioner assessed a deficiency, however, and the Tax Court upheld the Commissioner's assessment, holding that the "reasonable time" period within which a disclaimer must be filed began to run at the death of the testator. This Court reversed, reasoning that the time within which the disclaimer must be filed begins to run when the remainder interest becomes "indefeasibly fixed both in quality and quantity."

---

2. On February 28, 1977, the date the taxpayer filed a petition in the Tax Court for a redetermination of tax liability, she was a resident of

Excelsior, Minnesota. Thus, appeal to this Court was proper under 26 U.S.C. § 7482(b)(1)(A).

480 F.2d at 63. We said that remainder interests not subject to divestment become indefeasibly fixed at the death of the testator, and must be disclaimed within a reasonable time thereafter. We held that Cargill's remainder interest did not become fixed until the death of the life beneficiary, 19 years after the testator's death, and we found that the filing of the disclaimer within six months thereafter was reasonable and effective.

■ The area of disagreement in this case actually is rather narrow. No one argues that the taxpayer's remainder, considered in and of itself, was indefeasibly vested.[3] "When a remainder is indefeasibly vested, it is not subject to any condition precedent, to any contingent remainder, executory limitation, power of appointment or condition subsequent." Simes & Smith, Future Interests § 110, at 90 (2d ed. 1956).[4] In other words, a remainder, in order to be indefeasibly vested, must sooner or later pass to the remainderman or her estate. Here, just as in *Keinath*, taxpayer had to outlive her mother in order ever to enjoy possession of the assets of the trust. If she predeceased her mother, her interest failed. Such an interest is not indefeasibly fixed.

■ The only distinction suggested is that here, unlike in *Keinath*, the taxpayer also had a general power of appointment by will.[5] We hold that fact insufficient to distinguish *Keinath* for several reasons. If taxpayer, by her own act, had the right, at all events, to convert her defeasible interest into an indefeasible one, the Commissioner would have a point. But that was not the

nature of the power given her. First, the power was exercisable only "by will duly admitted to probate." Even if taxpayer exercised the power by making a will, the exercise might not ever become effective. A will creates no present rights. It is wholly ambulatory until the death of the testatrix. It can be revoked, either by destruction or the making of a later will. Even if not revoked, it may never by admitted to probate. It may be contested and set aside, for lack of formality or testamentary capacity. And in the present case, the power was not even exercisable unless the taxpayer predeceased her mother, which did not happen. In these circumstances, we do not believe it can be said that the conditional testamentary power converted taxpayer's remainder into an interest "indefeasibly fixed in quality."

■ And even if this point could somehow be surmounted, there remains an insuperable barrier to the Commissioner's attempt to escape *Keinath* : the trustee's power to invade principal for the benefit of the life tenant. The existence of this power made it impossible for the remaindermen's interests to be "indefeasibly fixed in . . quantity," as also required by *Keinath*, until the death of the life tenant. To be sure, the power to invade was limited to $10,000 a year, a small sum when viewed in relation to the tremendous appreciation (primarily through IBM stock) this trust has enjoyed. But the value of the *res* in 1945 when transferred from Mr. Page's estate to the trust was only about $239,000,[6] so a $10,-000–per–year potential depletion is hardly

---

3. Taxpayer's interest would probably have been classified at common law as a vested remainder subject to complete divestment if she did not survive the life tenant. The conditional element in the gift is expressed in a clause following the words actually making the gift, and doubts as to construction of an instrument are usually resolved in favor of vesting. See Moynihan, Introduction to the Law of Real Property 119, 121 & n.8 (1962). It is arguable that the interest was only a contingent remainder, see *id.* at 118 n.2, but the distinction, though it is of scholastic interest, is not relevant for present purposes and need not be pursued. If taxpayer's remainder was vested at all, it was not indefeasibly vested.

4. For similar definitions, see *e. g.*, Moynihan, *supra* note 3, at 118; Restatement, Property § 157, comment *f.*

5. The power was later partially released, as noted above, but, in accordance with the Commissioner's contention, we consider the nature of taxpayer's property interest as of the date of her father's death, when it was created.

6. The record does not tell us what the trust was worth in 1937, when the testator died. We are justified in believing that it was worth no more in 1937 than in 1945.

negligible. It is no answer that taxpayer was herself one of the trustees to whom this power was given. She was bound to exercise the power in trust for the sole benefit of her mother, and since 1965 the power has been shared with a disinterested co-trustee.

In addition, a reading of the *Keinath* opinion leaves us with a firm conviction that the rationale of that case covers this one. One of the state cases referred to as supporting the rule announced was the very decision of the Chancery Division of the Superior Court of New Jersey in *In re Estate of Page, supra*. The *Keinath* court, 480 F.2d at 63, not only cited *Page* but discussed it at some length, noting, among other things, that the remaindermen under Mr. Page's will had "powers of appointment." 480 F.2d at 63. The Commissioner argues that the case was relied on only in connection with the question what is a reasonable time, but this argument cannot survive a reading of the opinion. *Page* was discussed *after* this Court had held that six months would be a reasonable time. It was cited "[o]n the pivotal issue of when the reasonable time period commences for disclaiming a remainder interest . . ." 480 F.2d at 62–63. For us now to hold that the very power of appointment we referred to in *Keinath* disqualifies this taxpayer's interest for disclaimer purposes would be to disavow part of the rationale of *Keinath* and, in practical effect, to amend that opinion *nunc pro tunc.*

The result thus reached, it is true, has the effect of allowing taxpayer to wait until her mother's death and then decide whether, in light of all the circumstances, including tax consequences, to accept the bequest under her father's will. We see nothing unfair or improper in this application of the "knowledge of the existence of the transfer" clause of Treas. Reg. § 25.2511–1(c), as construed by *Keinath*. It is only fair—or so Congress and the Treasury could well have concluded in enacting § 2511 and issuing regulations thereunder—that a taxpayer know what property is involved before being put to her election whether to accept or disclaim it. What we said in *Keinath* in a slightly different context is relevant here: "Persons have a right to and should consider the tax consequences of many of their acts, as taxes take an increasingly larger bite of the income or corpus of individual assets." 480 F.2d at 66.

### III.

As any reader of this opinion will have seen by now, we view this case largely as an exercise in the reasoned application of precedent. The Commissioner has not asked us to overrule *Keinath*, and we are not inclined to do so on our own motion. The doctrine of *stare decisis*, weighty in any context, is especially so in matters of statutory construction. For in such cases Congress may cure any error made by the courts.[7] Until it does, the bar and the public are justified in expecting the courts, except in the most egregious cases, neither to depart from previous interpretations of statutes, nor to give them a grudging application. The judgment of the Tax Court is therefore reversed.

---

7. As a matter of fact, Congress has, since *Keinath*, changed the law on this very question, but has done so in a way that does not affect the property interest involved here. Section 2518 of the Internal Revenue Code, 26 U.S.C. § 2518, as added by Section 2009(b)(1) of the Tax Reform Act of 1976, 90 Stat. 1520, 1893, requires disclaimers by adults to be made within nine months of the creation of the interest disclaimed. The amendment is effective only as to interests created after December 31, 1976. Section 2009(e)(2) of the Tax Reform Act of 1976, 90 Stat. at 1896. The purpose of the amendment was to impose a uniform tax treatment, independent of state law. See H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. 65–68, *reprinted in* 4 [1976] U.S. Code Cong. & Admin. News pp. 2897, 3356, 3419–22. The report of the Committee on Ways and Means appears to acknowledge that *Keinath* was a correct statement of what the law was then (and still is as to interests created before the Act's effective date). See *id.* at 66 n.4, *reprinted in* U.S. Cong. & Admin. News, *supra*, at 3420 n.4. "In the case of transfers made before January 1, 1977, the rules relating to disclaimers under present law, including the period within which a disclaimer must be made, are to continue to apply . . ." *Id.* at 67–68, *reprinted in* U.S. Cong. & Admin. News, *supra*, at 3421–22.

ROSS, Circuit Judge, dissenting.

In our view, Lois P. Cottrell, during her lifetime and after her death by will, held such extensive control over her remainder interest in the testamentary trust that we would distinguish this case on its facts from the *Keinath* case and partially modify the wording of that opinion. Therefore, we dissent.

The relevant treasury regulation, § 25.-2511–1(c), requires that a disclaimer is effective for gift tax purposes "if the refusal is made within a reasonable time after knowledge of the existence of the transfer." This regulation is the agency's interpretation of 26 U.S.C. § 2511 which states that gift tax is imposed "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible * * * ." No mention is made in either the statute or regulation of an interest "indefeasibly fixed both in quantity and quality" or words of similar meaning.

The facts show that the taxpayer had complete knowledge of the transfer and the complicated nature thereof from the time of the death of her father in 1937. The taxpayer acted as an executor of her father's will and as a trustee of the residuary trust. Also, in 1944 the taxpayer executed a partial release of her general testamentary power of appointment.

More importantly, the remainder interest of the taxpayer, as originally created, essentially assured taxpayer of either possession during her life—by outliving the life beneficiary—or control after her death—through the exercise of her general testamentary power of appointment. Taxpayer essentially controlled all the events which could cause the ultimate disposition of her remainder interest.

In contrast, the facts presented in *Keinath* led to the conclusion that "the remainderman Cargill had really nothing to accept or renounce by way of beneficial ownership or control of the property until he succeeded in outliving the life beneficiary." 480 F.2d at 64. In *Keinath* the event which would cause divestiture of the remainderman's interest was not within his control, i. e. outliving the life beneficiary. If the remainderman had not outlived the life beneficiary he took nothing and did not have any control as to the identity of the ultimate beneficiary.

The *Keinath* opinion states that a disclaimer of a remainder interest following termination of a life estate would be found to have been made within a "reasonable time" if such interest was less than an indefeasibly vested remainder. We agree with this general rule as applied to the facts of *Keinath*. However, the facts of the instant case convince us that this general rule should be modified in certain instances. Modification should be mandated where the remainderman essentially controls the events which would cause divestiture of the interest, i. e. the right to appoint by will if the remainderman should not outlive the life beneficiary. To that extent we feel this court en banc should modify its ruling in *Keinath*.

We recognize that the general statement in *Keinath* previously cited is a convenient standard which would lend uniformity to the disposition of this type of case.[1] But we recognize, as did the *Keinath* court that:

> The reasonable time standard does not lend itself to a purely mathematical calculation and its parameters must depend on the varying factual situations and circumstances of each case. What is a reasonable time in which to disclaim a testamentary gift has been considered by state courts, but there has emerged no exact and decisive pattern except the general concept that a factual question is presented.

480 F.2d at 62. We are suggesting only that this court, en banc, should limit *Keinath's* holding to the facts of that case and

---

1. We fail to see the relevance of Part III of the majority opinion. Obviously in a situation such as this, where the Supreme Court has not ruled on the question presented in *Keinath*, this court en banc has an absolute right, which it frequently exercises, to modify the scope and application of a prior panel decision.

modify what we consider to be unnecessary dicta contained therein.

Judge Arnold's opinion indicates that we should uphold the effectiveness of the disclaimer because the *Keinath* decision relies on the case of *In re Estate of Page, supra,* 113 N.J.Super. 582, 274 A.2d 614 (Ch.Div. 1970), in which Lois P. Cottrell, the taxpayer in the current case, established that her disclaimer was effective under state law. While we agree with the decision in *Keinath* as applied to its facts, we do not believe that citation to *Page* now binds us to uphold the disclaimer for federal gift tax purposes. First, as the *Keinath* court noted, "[w]e are not conclusively bound by the state law" 480 F.2d at 61–62 (footnote omitted). This is especially true here, since we are interpreting federal gift tax regulations and the government was not a party to the state court case. We also note that *Page* was an advisory opinion rendered in a friendly lawsuit between the trustees and remaindermen. Secondly, a careful reading of *Page* indicates that the state court would have found the disclaimer effective regardless of whether the remainder was indefeasibly vested or otherwise. Thus, *Page* does not really support the proposition for which it is cited in *Keinath*; the distinction between indefeasibly vested remainders and remainders subject to divestiture.

The practical result of the majority opinion is to permit a remainderman with a power of appointment to sit by for over 33 years before having to determine whether to accept the inheritance or pass it on to others of *her own choice.* In the process the United States has been deprived of nearly five million dollars which it probably would have collected, at least in major part, if the remainderman had been forced to make the election within a reasonable time after her father's death.

In summary, we would modify the "vested remainder" test in *Keinath* in situations where the remainderman has the ultimate control over the disposition of his remainder interest. This modification is necessary because, as in this case, the distinction between an indefeasibly vested remainder and a vested remainder subject to divestiture may be illusory in nature and has no basis in the federal tax statutes. This modification would allow us to more accurately define what constitutes a "transfer" under Treas. Reg. § 25.2511–1(c). As we noted in *Keinath,* "'"taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed."'" *Keinath, supra,* 480 F.2d at 64, *citing Estate of Sanford v. Commissioner,* 308 U.S. 39, 43, 60 S.Ct. 51, 55, 84 L.Ed. 20 (1939) (citations omitted).

HEANEY and BRIGHT, Circuit Judges, join in this dissenting opinion.