858 F.2d 917
 99 A.L.R.Fed. 433, 62 A.F.T.R.2d 88-6006,
88-2 USTC P 13,783
 Lois W. POINIER, as Transferee of Helen Wodell Halbach, Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE.
W. Page WODELL, as Transferee of Helen Wodell Halbach, Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE.
ESTATE OF Helen Wodell HALBACH, Deceased, Lois Wodell
Poinier, Executrix Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE.
 Nos. 88-1087 to 88-1089.
 United States Court of Appeals,
Third Circuit.
 Argued July 26, 1988.
Decided Sept. 30, 1988.
 
 Geoffrey J. O'Connor (argued), Garden City, N.Y., for appellants.
 William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Ann Belanger Durney, Francis M. Allegra (argued), Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee.
 Before GIBBONS, Chief Judge, and SEITZ and HUTCHINSON, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Chief Judge:
 
 
 1
 Lois W. Poinier, as transferee of Helen W. Halbach, W. Page Wodell, as transferee of Helen W. Halbach, and Louis W. Poinier, executrix of the estate of Helen W. Halbach, appeal from a Tax Court decision 1) that Helen W. Halbach made a transfer subject to a gift tax, 2) that her children are liable as donee transferees, and 3) that her children are liable for interest, beyond the value of the gift, accrued since the respective notices of transferee liability. The petitioners claim that no taxable transfer was made by Helen W. Halbach, but that if there was such a transfer, the limit of their liability as transferees is the value of the gift. We will affirm the Tax Court ruling that Helen W. Halbach made a taxable transfer. We will reverse the ruling that the transferees are liable for interest in excess of the value of the gift.
 
 
 2
 * Parker Webster Page, a resident of New Jersey, died in January of 1937. His will established a trust, the income of which was payable to his wife, Nellie A. Page, for life, with the remainder in equal shares to his daughters, Helen Page Wodell and Lois Page Cottrell. Helen Page Wodell later became Helen W. Halbach. She is the alleged transferor. The relevant paragraph of the will reads:
 
 
 3
 If my wife, Nellie A. Page, survives me, I give, devise, bequeath and appoint all of said residue of my estate to my Trustees, hereinafter named, IN TRUST, to hold the same during the life of my wife Nellie A. Page and to invest and reinvest the principal and to apply the net income to her use. Upon her death I give, devise, bequeath and appoint the principal in equal shares to my daughters Helen Page Wodell [Halbach] and Lois Page Cottrell and if either of my daughters should then be dead to such persons and in such proportions as such daughter may by will duly admitted to probate legally appoint and in default of such appointment to such daughter's issue then surviving in equal shares per stirpes.
 
 
 4
 Mr. Page's wife Nellie and his daughters Helen and Lois were named as trustees. Nellie renounced her right to act as trustee, but her two daughters qualified. They acted as the only trustees until December 16, 1965, when they designated the Summit and Elizabeth Trust Company as a third trustee. These three trustees served until Nellie Page died on April 14, 1970, at the age of 100. Nellie was survived by both Helen Halbach, then 79, and Lois Cottrell, then 74. Also surviving were Helen's children, Lois Poinier and W. Page Wodell, as well as Lois' three children.
 
 
 5
 In 1944, Lois Cottrell, and in 1945, Helen Halbach, released their testamentary powers of appointment under their father's will, except to the extent that they each reserved the power to appoint within the class of their respective descendants and spouses. Thus when their mother died on April 14, 1970, they both retained a limited power of appointment. On April 19, 1970, Helen, and on April 30, 1970, Lois, renounced all rights in the residual trust under their father's will. As of April 19, 1970, the fair market value of the remainder which Helen renounced was $10,450,623.41. An action was filed in the New Jersey Superior Court to determine the validity of these renunciations. That court held that they were timely under New Jersey law, since the remainder did not become possessory until the April 14, 1970 death of Nellie Page. The court ordered distribution of the residue to the children of Helen and Lois. In re Estate of Page, 113 N.J.Super. 582, 274 A.2d 614 (Ch.Div.1970). Neither Helen nor Lois included the value of the residue in a gift tax return. Helen died on August 5, 1972.
 
 
 6
 In the early 1970's, the Commissioner of Internal Revenue determined that Lois Cottrell owed additional gift tax in the amount of $4,639,402.50 due to her renunciation of the residual interest. The Tax Court held that because the renunciation was not made within a reasonable time after knowledge of the existence of the transfer, a taxable gift was made. See Treas.Reg. Sec. 25.2511-1(c) (1958) (current version at 26 C.F.R. Sec. 25.2511-1(c)). The Court of Appeals for the Eighth Circuit reversed, holding that the time to renounce does not begin to run until the remainder interest is "indefeasibly fixed in both quality and quantity." Cottrell v. Commissioner of Internal Revenue, 628 F.2d 1127, 1129 (8th Cir.1980) (in banc) (quoting Keinath v. Commissioner of Internal Revenue, 480 F.2d 57 (8th Cir.1973)). The Commissioner did not petition for certiorari. Thus neither Lois Cottrell as donor, nor her children as transferees, have ever paid a gift tax on her renunciation.
 
 
 7
 About three months after the Cottrell decision, the Court of Appeals for the Ninth Circuit declined to follow the Eighth Circuit's Keinath rule as to timeliness of a renunciation. Jewett v. Commissioner of Internal Revenue, 638 F.2d 93 (9th Cir.1980). The Supreme Court granted certiorari to resolve this conflict, and affirmed Jewett, thus rejecting Keinath and Cottrell. 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982).
 
 
 8
 On June 25, 1981, about three weeks after the Supreme Court granted certiorari in Cottrell, the Internal Revenue Service sent notices of gift tax deficiency to the executor of the estate of Helen W. Halbach, and of transferee liability to her children, Lois Poinier and W. Page Wodell. There is nothing in the record before us which explains why the Internal Revenue Service waited until 1981 to pursue Helen's side of the family for gift tax, although they had pursued Lois ten years earlier.[1] The executor of Helen's estate and Helen's two children all filed petitions in the Tax Court seeking redetermination of the deficiency and transferee liabilities.
 
 
 9
 As might be expected, the Tax Court followed the Supreme Court's Jewett decision, holding that Helen's renunciation was untimely under Treas.Reg. Sec. 25.2511-1(c). Thus the court held that Helen's estate owed a gift tax of $4,881,386.52 plus interest from April 15, 1971 to date of payment. Since Helen's children each received $5,225,311.71 from their grandfather's trust, they were held liable to that extent as transferees for the deficiency and interest owed by the estate. The Tax Court also held the transferees liable for interest from and after the date of issuance of the notice of transferee liability on June 25, 1981. The court declined to consider whether certain prepayments made by the transferees in 1982 and 1983, which they designated as interest under Rev.Proc. 82-51, 1982-2 C.B. 839, should be so treated for income tax purposes. These appeals followed.
 
 II
 A. Time to Disclaim
 
 10
 The estate of Helen W. Halbach and the transferees urge that the Jewett rule should not be applied because that case was wrongly decided. Whatever merit that argument might have if addressed to the Supreme Court, it is not one that this intermediate appellate court may consider. Under Jewett the renunciation by Helen W. Halbach was a transfer subject to gift tax. We note the incongruity that the Cottrell side of the family, identically situated, has escaped gift tax liability. That incongruity, however, does not permit us to disregard binding precedent in our hierarchical court structure.
 
 B. Transferee Liability
 
 11
 The transferees contend that, even if Helen W. Halbach owed gift tax, the Commissioner failed to carry the burden imposed by state law for the imposition of transferee liability on them. It is not disputed that the Commissioner has not established Helen's insolvency at the time of the transfer, or the amount of her assets at that time. See Section 4 of the Uniform Fraudulent Conveyance Act, 25 N.J. Stat.Ann. Sec. 25:2-10 (West 1940); Brown v. Commissioner of Internal Revenue, 24 T.C. 256, 267 (1955), acq. 1955-2 C.B. 4. This argument is predicated on 26 U.S.C. Sec. 6901(a) (1970),[2] which provides in relevant part:
 
 
 12
 (a) Method of Collection.
 
 
 13
 The amounts of the following liabilities shall ... be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
 
 
 14
 (1) Income, Estate and Gift Taxes
 
 
 15
 (A) Transferees
 
 
 16
 The liability, at law or in equity, of a transferee of property....
 
 
 17
 The transferees note that this section does not create a substantive liability, but cross-references to other law such as state fraudulent conveyance law. See Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 42-44, 78 S.Ct. 1047, 1049-50, 2 L.Ed.2d 1126 (1958). While that is true, it is irrelevant, for 26 U.S.C. Sec. 6324(b) (1970) provides in relevant part, that:
 
 
 18
 unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift.
 
 
 19
 This court has held, moreover, that donee liability is determined by federal, not state, law, and is not dependent upon the insolvency of the donor. Baur v. Commissioner of Internal Revenue, 145 F.2d 338 (3d Cir.1944). Since a gift tax was due and unpaid, the donees are liable for its payment.
 
 C. Interest
 
 20
 The federal gift tax in issue is a tax on the donor. 26 U.S.C. Sec. 2502(d) (1970). It was due at the time fixed for filing a gift tax return. 26 U.S.C. Secs. 6075, 6151 (1970). The "general rule" for interest on taxes states:
 
 
 21
 If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid.
 
 
 22
 26 U.S.C. Sec. 6601 (1970). One of the "applicable rules" regarding interest provides:
 
 
 23
 Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected and paid in the same manner as taxes. Any reference in the title ... to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.
 
 
 24
 26 U.S.C. Sec. 6601(f)(1) (1970). Thus the donor, Helen W. Halbach, and her estate, owe interest from the due date of the gift tax return until the full amount of the tax is paid.
 
 
 25
 As we note in Part II B above, the donees are "personally liable for such tax to the extent of the value of such gift." 26 U.S.C. Sec. 6324(b) (1970). The question we must address is the relationship between sections 6601(f)(1) and 6324(b). The donees concede that the second sentence of section 6601(f)(1) must be read into section 6324 so that donees are liable not only for the tax owed by the donor, but also for the interest owed by the donor. They urge, however, that when section 6601(f)(1) is thus read into section 6324(b), it is subject to the overall limitation of liability of "the value of such gift."
 
 
 26
 This limitation on donee liability is both consistent with the plain language of section 6324(b) and sensible. This court has held that since the donee of any gift is liable for unpaid gift tax, it does not matter that the gift to a particular donee was not itself taxable. Baur v. Commissioner of Internal Revenue, 145 F.2d 338 (3d Cir.1944). Unless the value-of-the-gift limitation were held to be applicable to interest, a donee could be liable for interest on a gift to someone else in an amount exceeding the gift he received. The Commissioner does not urge, therefore, that a donee must pay the full interest owed by the donor on unpaid gift tax even though the total exceeds the value of that donee's gift.
 
 
 27
 The Commissioner's position, accepted by the Tax Court, is that there is an entirely independent liability for interest, placed directly on the transferee, which arises at the time of service of a notice of transferee liability. This is not an easy argument to articulate, for unlike the donee liability provision in section 6324(b), the Commissioner can point to no specific code provision imposing such an independent liability on a transferee. As we noted in Part II B above, it is well established that the general transferee liability provision "neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes." Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 42, 78 S.Ct. 1047, 1049, 2 L.Ed.2d 1126 (1958).
 
 
 28
 Prior to the Revenue Act of 1926, the federal government had no special mechanism for collecting taxes from transferees, but instead had to rely on the same measures available to any creditor. For example, if a corporation which owed taxes distributed its assets to stockholders or sold its assets to another corporation, thus rendering collection against it futile, the federal government had to resort to either a suit in equity against the transferee or, after obtaining a judgment against the transferor, proceed via a creditor's bill to satisfy the judgment. See S.Rep. No. 52, 69th Cong., 1st Sess. (1926), reprinted in 1939-1 C.B. (Pt. 2) 332, 353-54. The Revenue Act of 1926 changed this, and permitted the government to assess and collect transferee liability "in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title." Revenue Act of 1926, ch. 27 Sec. 280(a), 44 Stat. 9, 61.
 
 
 29
 The Senate version of the transferee liability provisions would not have imposed interest on the transferee for the period between the transfer and a notice and demand following an adverse ruling by the Board of Tax Appeals. The transferee, however, would have to pay any interest accumulated prior to the transfer and also pay interest after notice and demand following an adverse ruling by the Board. S.Rep. No. 52, 69th Cong., 1st Sess. (1926), reprinted in 1939-1 C.B. (Pt. 2) 332, 355. The proposal was modified in conference, and the conference report explains:
 
 
 30
 Under the amendment the liability of the taxpayer for the tax, including all interest and penalties, is fixed as of the time of the transfer of the assets. No further interest subsequently accrues upon such liability as assumed by the transferee, except the interest under section 276(b) and (c) for failure to pay upon notice and demand after the outlined procedure has been completed and interest at 6 per cent a year for reimbursing the Government at the usual rate for loss of the use of money due it.
 
 
 31
 H.R.Rep. No. 356, 69th Cong., 1st Sess. (1926), reprinted in 1939-1 C.B. (Pt. 2) 361, 372.
 
 
 32
 Under the Revenue Act of 1926, then, there were three distinct interest calculations to be done in a case of transferee liability. First, the transferee's liability as of the date of the transfer (which might have included interest) had to be established. See Revenue Act of 1926, ch. 27, Sec. 280(a)(1), 44 Stat. at 61. Second,
 
 
 33
 [i]nterest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency, shall be paid upon notice and demand from the collector, and shall be collected as a part of the tax, at the rate of 6 per centum per annum from the date prescribed for payment of the tax ... to the date the deficiency is assessed.
 
 
 34
 Revenue Act of 1926, ch. 27, Sec. 274(j), 44 Stat. at 56. This interest calculation stopped as of the assessment of deficiency and appears to be the provision to which the conference report referred in speaking of "6 per cent a year" as the "usual rate for loss of the use of money due" the government. The Act also provided for a third calculation of interest:
 
 
 35
 Where a deficiency, or any interest or additional amounts assessed in connection therewith under subdivision (j) of section 274 ... is not paid in full within ten days from the date of notice and demand from the collector, there shall be collected as part of the tax, interest upon the unpaid amount at the rate of 1 per centum a month from the date of such notice and demand until it is paid.
 
 
 36
 Revenue Act of 1926, ch. 27, Sec. 276(b), 44 Stat. at 57-58. Thus, under this Act, there was a separate interest calculation which ran from the date of notice and demand until the date of payment if the taxes were not paid within ten days of notice and demand.
 
 
 37
 As the law stood in 1970, however, there were no such separate calculations of interest. Instead, in the 1954 Code, Congress collapsed the separate provisions into one:
 
 
 38
 If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid.
 
 
 39
 26 U.S.C. Sec. 6601(a) (1970). This was not accidental. As the House Report explained:
 
 
 40
 Subsection (a) of this section provides a general rule that interest at the rate of 6 percent shall run from the due date to the date paid in the case of any amount of tax which is not paid on the due date.
 
 
 41
 ....
 
 
 42
 Under the provisions of this section, there is no interest on interest. Under existing law, in the case of deficiencies in income, estate or gift taxes, interest runs from the date prescribed for payment of the tax to the date of assessment of the deficiency and then interest on the amount assessed runs from the date of assessment.
 
 
 43
 H.R.Rep. No. 1337, 83rd Cong., 2d Sess., reprinted in 1954 U.S.Code Cong. & Admin.News 4017, 4565. The same language appears in the Senate Report. S.Rep. No. 1622, reprinted in 1954 U.S.Code Cong. & Admin.News 4621, 5238. To drive the point home, the Code also states, "No interest under this section shall be imposed on the interest provided by this section." 26 U.S.C. Sec. 6601(f)(2) (1970). The change was also reflected in the deficiency procedures which, unlike those adopted in 1926, simply do not have a provision for a separate interest calculation. See 26 U.S.C. Secs. 6211-6216 (1970). Thus, despite the language in the 1926 legislative history, we know of no 1970 authority to impose an "independent liability" for interest after the notice of deficiency. Donees are liable for one type of interest: interest calculated from the day the gift tax was due until it is paid. An "independent liability" such as the Commissioner seeks would restore the interest on interest liability which was removed by Congress in 1954. Indeed, the Commissioner is contending for interest on $343,925.19 in interest.[3]
 
 
 44
 In deciding in favor of the Commissioner, the Tax Court relied on Patterson v. Sims, 281 F.2d 577, 580-81 (5th Cir.1960), which held that a transferee is liable under federal law for post-assessment interest. That case is plainly distinguishable. It involved a provision in the 1939 Code which was virtually identical to section 276(b) of the Revenue Act of 1926 except with a different interest rate. See 26 U.S.C. Secs. 292 and 294(b) (1940), 53 Stat. 1, 88-89. Stein v. Commissioner of Internal Revenue, 37 T.C. 945, 959-60 (1962), also cited by the Tax Court, is not distinguishable on this ground, since it did arise under the 1954 Code. However, Stein relied on Patterson, viewing Secs. 6601 and 6901 of the 1954 Code as simply counterparts to Secs. 294(b) and 311 of the 1939 Code. Stein did not note that the 1954 Code made relevant changes.
 
 
 45
 Even if these difficulties with relying on the legislative history of the Revenue Act of 1926 could be disregarded, there is a another major difficulty. The 1926 Act simply had nothing to do with the limits of donee liability for gift taxes, because that act repealed the gift tax. Revenue Act of 1926, ch. 27, Sec. 1200(a), 44 Stat. at 125-26.[4] It was concerned with the transfer of assets by someone who already owed taxes, not with transfers which themselves were taxable events. Even if the 1926 legislative history were authority for an independent liability for post-notice interest, it says nothing about whether this independent liability is also subject to the value-of-the-gift limitation. Neither Patterson nor Stein, the strongest support available, was a gift-tax case.
 
 
 46
 In the absence of explicit statutory authority or useful legislative history, the Commissioner is reduced to arguing that Congress could not have intended to encourage donees whose liabilities are already equal to the value of their gift to delay the payment of gift taxes as long as possible, and that we should read the 1954 Code creatively. It was not, however, patently unreasonable for Congress to limit the total liability of donees to the value of the gift received. The incentive to which the Commissioner refers arises only in the comparatively rare instance when the amount of the gift is exhausted by the tax due plus interest owed by the donor. That probably occurred here because the Internal Revenue Service, fully aware of the issue, and actually litigating against the Cottrell side of the family, delayed for ten years in asserting the gift tax against Helen W. Halbach's side. The equities favoring a creative rewriting of the 1954 Tax Code are not in this situation impressive.
 
 III
 
 47
 The decision of the Tax Court, holding that the estate of Helen W. Halbach is liable for gift tax on her renunciation of the residual in her father's testamentary trust will be affirmed. The decision imposing transferee liability on Lois W. Poinier and W. Page Wodell to the extent of the value of the gift will be affirmed. The decision imposing interest on the transferee from the date of notice of transferee liability to the date of payment will be reversed.
 
 
 48
 SEITZ, Circuit Judge, concurring in part and dissenting in part.
 
 
 49
 I join the majority to the extent that it holds that the estate of Helen S. Halbach is liable for a gift tax and interest based on her untimely renunciation of the remainder interest in her father's testamentary trust. I also agree that her children are liable as donee transferees for such tax and interest up to the point where they aggregate the value of the gift. Furthermore, I am willing to agree with the majority, with misgivings, that the interest requirement ceased at the point when the cap was reached.
 
 
 50
 My difference with the majority is that I recoil from its implicit, but important holding, that no interest accrued here, even after the date the deficiency determination was made by the Tax Court. At that point, in my view, interest commenced to accrue on the amount of the judicially established tax deficiency. The situation is akin to a monetary judgment of any other court. Although it could be clearer, I believe the obligation is mandated by 26 U.S.C. Sec. 6601. It is noteworthy that Bond Form 9, required to obtain a stay pending appeal of a deficiency determination, (App. 1 to the Rules of Practice of the Tax Court) provides for the payment of "the deficiency as finally determined, together with any interest * * *."
 
 
 51
 It is inconceivable to me that Congress intended that a donee taxpayer, subject, in effect, to a Tax Court judgment, was to be given a free ride until the government obtained satisfaction of that judgment. At a minimum, I would limit the application of the cap to the period prior to the Tax Court's deficiency decision.
 
 
 
 [1]
 The Internal Revenue Service assessed an estate tax on Helen's renunciation as a transfer in contemplation of death, but the Tax Court held that it was not made in contemplation of death, and thus no estate tax was due
 
 
 [2]
 References are to the 1970 edition of the United States Code since the transfers were made in that year
 
 
 [3]
 The gift tax deficiency was found by the Tax Court to be $4,881,386.52. The transferee liability (excluding the post-notice interest) was limited to $5,225,311.71, the value of the gift to each donee. The difference between these two figures is $343,925.19 in interest
 
 
 [4]
 Instead, Congress presumed that any transfer made within two years of death was made in contemplation of death. When the Supreme Court invalidated this "irrebuttable presumption," Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), Congress reenacted the gift tax. Revenue Act of 1932, ch. 209, Secs. 501-532, 47 Stat. 169, 245