Pauline KEINATH, Transferee of Assets of Cargill MacMillan, Transferor, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Cargill MacMILLAN, Jr., Transferee of Assets of Cargill MacMillan, Transferor, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Whitney MacMILLAN, Transferee of Assets of Cargill MacMillan, Transferor, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Pauline W. MacMILLAN, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Cargill MacMILLAN 1967 TRUST et al., Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Nos. 72–1647 to 72–1651.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1973.

Decided May 8, 1973.

Rehearing Denied June 1, 1973.

John W. Windhorst, Minneapolis, Minn., for appellants.

Donald H. Olson, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before GIBSON, LAY and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

These consolidated appeals[1] question the validity of a gift tax of $147,572 plus interest assessed by the Commissioner and sustained by the Tax Court on a disclaimer made by a remainderman within six months after the death of the life beneficiary. The Tax Court opinion, reported in 58 T.C. 352 (1972), held the disclaimer was not timely filed. We reverse for the reasons set forth in this opinion.

1. Separate decisions were entered in each of the above cases and were identical as to Pauline Keinath, Cargill MacMillan, Jr. and Whitney MacMillan, as transferees of assets of Cargill MacMillan, transferor. Pauline MacMillan, the wife of Cargill MacMillan, now deceased, is a party by reason of the consent she signed to treat gifts made by one spouse as made one-half by each spouse pursuant to 26 U.S.C. § 2513.

The Cargill MacMillan 1967 Trust is included as a party *since it holds assets* of the disclaimant.

John H. MacMillan, Sr., the grandfather of appellants Pauline Keinath, Cargill MacMillan, Jr., and Whitney MacMillan died testate in 1944, devising and bequeathing most of his estate to a trust, the income of which was to be paid to the testator's widow Edna MacMillan for life and upon her death the principal was to be divided between the testator's two sons, John, Jr. and Cargill MacMillan. In the event either son predeceased the widow, the deceased son's share was to be distributed to his children per stirpes. John, Jr. and Cargill were named in the will and subsequently served as co-trustees of the trust. John, Jr. died in 1960 survived by three children. Cargill then served as sole trustee.

Cargill at no time accepted any income or principal from the trust and the parties agree that Cargill by virtue of his father's will[2] had a vested remainder in one-half of the trust subject to divestiture only if he should predecease the life beneficiary.

The life beneficiary Edna MacMillan died March 28, 1963. On May 20, 1963, Cargill signed a document titled "Disclaimer," which was filed in the District Court of Hennepin County, Minnesota on September 6, 1963. That document reads in part:

"WHEREAS, under the terms of Article III of said trust instrument, the undersigned would, after his mother's death, except for this Disclaimer, have succeeded to a one-half (½) beneficial interest in the remainder of said trust, but in the event of his death prior to that of his mother, said one-half (½) beneficial interest in the trust or trust property would have passed to the issue of the undersigned who survive said Edna C. MacMillan, per stirpes, free and clear of trust, and

\* \* \* \* \* \*

"NOW, THEREFORE, in consideration of the premises, the undersigned does hereby finally and irrevocably disclaim, renounce, remise and refuse to accept any beneficial interest in said trust or trust assets of any nature, real, personal or otherwise, including both principal and accrued or accruing income thereof, which now or hereafter would be effectively vested in him under the provisions of Article III of said last will and testament of John H. MacMillan, were it not for the execution of this Disclaimer, with the understanding that all right, title and interest in said one-half (½) interest in the trust or trust property will pass to his issue who survive said Edna C. MacMillan, per stirpes, this Disclaimer to become effective immediately upon, but not before, its filing with the District Court for the Fourth Judicial District, Hennepin County, Minnesota, in the proceeding entitled: 'In the Matter of the Trusteeship under the Last Will and Testament of John H. MacMillan, Deceased,' therein and maintained under District Court File No. T-2078."

Prior to the filing of the executed Disclaimer, Cargill MacMillan, as Trustee, on August 16, 1963, petitioned the District Court of Hennepin County, Minnesota, for an order construing the

---

2. Article III of the Will read as follows:
"ARTICLE III. All the rest, residue, and remainder of my estate . . . I give, devise, and bequeath to my sons John H. MacMillan, Jr. and Cargill MacMillan, as trustees, in trust for the following uses and purposes:

"(a) To pay the net income therefrom in convenient installments to my said wife for the term of her natural life.

"(b) Upon the death of my said wife the trust hereby created shall thereupon terminate and the principal thereof together with any income therefrom subsequent to the death of my said wife, shall be distributed, share and share alike, between my said two sons; should either of my said sons die prior to the termination of this trust the share which such son would have received if then living shall be distributed per stirpes and not per capita among the children and among the lawful issue of a deceased child or children of his, if any. . . ."

provisions of the trust and the effect of such a Disclaimer upon the devolution of his share of the trust. The petition was heard on September 6, 1963, the same date the Disclaimer was filed with the court. The Minnesota District Court found that the Disclaimer was valid and timely, that Cargill had never accepted any beneficial interest in the trust estate or dominion over the property of the trust, and that the beneficial interest in the trust estate effective as of the date of Edna C. MacMillan's death passed to the six grandchildren by virtue of the terms of the trust instrument.

On June 16, 1969, the Commissioner sent notices of deficiencies to the appellants because he claimed that Cargill's attempted renunciation was in fact a gift by him to his children of one-half of the assets of the trust, which were valued at $669,797.63 on September 6, 1963. Each appellant, except Cargill's wife, was assessed a gift tax of $147,572, plus interest, though it was stipulated the amount assessed was a duplicate of the liabilities set forth in all the four cases. Cargill's wife as a spouse who had consented to her husband's "gifts," was assessed one-half of the above amount.

The Tax Court upheld the Commissioner's assessments by relying on 26 U.S.C. § 2511(a),[3] Treas.Reg. § 25.2511–1(c) (1958),[4] and Kathryn S. Fuller, 37 T.C. 147 (1961). The Tax Court[5] reasoned that the regulation and *Fuller* establishes a two-pronged test to determine the validity of a disclaimer and said "that the disclaimer [must] be valid under local law *and* made within a reasonable time after the disclaimant learns of the transfer."

"Reasonable time" is not defined in the Code or Regulations in this context, and the Tax Court held on the basis of *Fuller* that "reasonable time" should be defined according to a federally determined standard. The Tax Court then concluded that Cargill failed to disclaim his interest within a reasonable time, because he waited from October 20, 1944—the time the testamentary trust was created—until September 6, 1963, the

3. That section provides for the imposition of a gift tax upon the transfer of property by gift regardless of whether the transfer is in trust or otherwise and "whether the gift is direct or indirect." Section 2511(a) reads:
 "(a) Scope.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States."

4. Treas.Reg. § 25.2511–1(c) reads in part:
 "(c) The gift tax also applies to gifts indirectly made. Thus all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. See further § 25.-2512–8. Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocable and effective under the local law. There can be no refusal of ownership of property after its acceptance. Where the local law does not permit such a refusal, any disposition by the beneficiary, heir, or next-of-kin whereby ownership is transferred gratuitously to another constitutes the making of a gift by the beneficiary, heir, or next-of-kin."

5. Since all the facts have been stipulated by both parties, our review is limited to determining whether the Tax Court's decision was induced by an erroneous view of the law. Wilmington Co. v. Helvering, 316 U.S. 164, 168, 62 S.Ct. 984, 86 L.Ed. 1352 (1942); C. I. R. v. Riss, 374 F.2d 161, 166 (8th Cir. 1967); Lessmann v. C. I. R., 327 F.2d 990, 993–994 (8th Cir. 1964); Schoenberg v. C. I. R., 302 F.2d 416, 419 (8th Cir. 1942).

date of the filing of the disclaimer in the Minnesota courts.

The appellants contend that Brown v. Routzahn, 63 F.2d 914 (6th Cir. 1933), cert. denied, 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557 established the rule of law that a disclaimer valid and effective under *local law* is not a taxable transfer for federal tax purposes and that the Commissioner either by his regulation *or his interpretation of that regulation is seeking to circumvent that principle of law. Routzahn* was an estate tax case recognizing the common law principle on disclaimers. Treas.Reg. § 25.2511–1(c), *which implements* 26 U.S.C. § 2511 that applies the gift tax imposed by 26 U.S. C. § 2501, also recognizes the common law principle or doctrine of disclaimers. It reiterates the basic common law requirements that the disclaimer must be "made within a reasonable time after knowledge of the existence of the transfer" and that it be unequivocal and effective under local law. These conditions are but a codification of common law principles applicable to the doctrine of disclaimers, and the states, recognizing the doctrine, may well vary in what constitutes a reasonable time or even in imposing a reasonable time condition.

Central to this case is the interpretation or denotation of the word "transfer" in the regulation.[6] Is the transfer made at the time the trust is established or when the remainderman comes into possession and control? In other words is the reasonable time period calculated from the date the remainderman has the right of possession or control of the property or when the trust is established? The Commissioner contended and the Tax Court held that the reasonable time commenced to run at the time the trust was established.

■ The appellants would have us look to the local law to define "reasonable time" since this federal taxing act

by its express language or necessary implication makes its operation dependent upon state law. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199 (1932). Although the appellants argue for a complete state standard on the validity of a disclaimer, we think the Commissioner has the right in the Treasury Regulations to set forth the conditions under which disclaimers will be recognized. We are concerned here with the exercise of federal taxing power and state law participates only to the extent recognized in the federal statute or Treasury regulation. This is a federal tax act, and in the interest of uniformity implementing regulations should be applied evenly throughout the country. Furthermore as a federal tax act, the Commissioner pursuant to statutory authorization has the right to define the breadth and scope of its operation through regulations. 26 U.S.C. § 7805(a). However, notwithstanding the fact that the gift tax is a national act, there will be many variances in its application because of the very nature of the following imposed conditions: (1) the disclaimer must be recognized and effective under local law; (2) the disclaimer must be made within a reasonable time after knowledge of the existence of the transfer; (3) there can be no disclaimer after there has been acceptance of the transfer of the property; and (4) the disclaimer must be unequivocal. In this case the Commissioner admits that the Disclaimer would have been timely made if the date from which the reasonable period is to be calculated commences at the death of the life beneficiary; also, admittedly otherwise it would not.

■ In determining "reasonable time" and the related issue of when the reasonable time period commences, we perforce, absent a federal statute or regulation defining reasonable time, must look to the law of the states. We are

---

6. Treas.Reg. § 25.2511–1(c) in part states where local law gives a beneficiary an unqualified right to "refuse to accept ownership of property *transferred* from

a decedent," the refusal to accept ownership does not constitute the making of a gift. (emphasis added).

not conclusively bound by the state law,[7] but this is the only field to probe for legal decisions and discussions on the phrase "reasonable time" as used in the context of making valid disclaimers.

The reasonable time standard does not lend itself to a purely mathematical calculation and its parameters must depend on the varying factual situations and circumstances of each case. What is a reasonable time in which to disclaim a testamentary gift has been considered by state courts, but there has emerged no exact and decisive pattern except the general concept that a factual question is presented.

A review of the state court cases is of limited assistance in defining "reasonable time." Brown v. Routzahn, *supra*, held there was no time limit under Ohio law. Obviously this ruling would conflict with the Treasury Regulation and is of no aid on this issue.

In Strom v. Wood, 100 Kan. 556, 164 P. 1100 (1917), the Kansas Supreme Court held, in a devise the court construed as giving a life estate to the widow with a vested remainder to the four children subject to divestment of one-half thereof by the widow remarrying or becoming incapacitated, that the interest of a remainderman at least to his one-eighth interest not subject to divestment could not be renounced after a period of six years from the testator's death. The court held that a judgment creditor who predated the will had a lien on the remainderman's interest which by lapse of time and non-action he was presumed to have accepted and that the attempted renunciation after six years was not within a reasonable time. Coleman v. Burns, 103 N.H. 313, 171 A.2d 33 (1961), held an oral disclaimer by a succeeding life tenant before the demise of the current life tenant was within a reasonable time. There is no showing how long this was after the death of the testator. Perkins v. Isley, 225 N.C. 793, 32 S.E.2d 588 (1945) held a written disclaimer filed February 12, 1940, by a sole beneficiary to a will of a testator who died May 4, 1939, and offered for probate on December 18, 1939, was valid. Sanders v. Jones, 347 Mo. 255, 147 S.W.2d 424 (1941), held that a 15-month interval was not a reasonable time, but two years later Seifner v. Weller, 171 S.W.2d 617 (Mo.1943) held that 16 months was a reasonable time.

These cases demonstrate that what is a reasonable time is a phrase of art depending on the facts and circumstances of each case. Also of some relevancy and probative value is the current Minnesota statute, Minn.Stat.Ann. § 525.532 Subd. 3 (1969).[8] While not enacted until 1965, it fixes a reasonable time period at six months after the event that indefeasibly fixes the estate.

Here we can confidently say that the 19-year period from the time of the creation of the testamentary trust is not a reasonable time and that the less than six months period after the death of the life beneficiary would in Minnesota and in most states constitute a reasonable time.

On the pivotal issue of when the reasonable time period commences for dis-

---

7. Commissioner v. Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) held the federal courts are not bound by a particular decision of a state court regardless of whether the adjudication was non-adversary, consensual, or collusive but instead must apply what they find the state law to be, giving proper consideration to the lower state court's interpretation.

8. That subdivision reads:
 "Subd. 3. Such disclaimer shall be filed at any time after the creation of the interest, but in all events within six months after the death of the person by whom the interest was created or from whom it would have been received, or, if the disclaimant is not finally ascertained as a beneficiary or his interest has not become indefeasibly fixed both in quality and quantity as of the death of such person, then such disclaimer shall be filed not later than six months after the event which would cause him so to become finally ascertained and his interest to become indefeasibly fixed both in quality and quantity."

claiming a remainder interest, Seifner v. Weller, 171 S.W.2d 617 (Mo.1943) and In Re Estate of Page, 113 N.J.Super. 582, 274 A.2d 614 (1970) viewed the death of the life tenant or life beneficiary as the commencement date or event that triggered the commencement of the running of the reasonable time period. In *Seifner,* however, the remainder devise of land was accompanied by a potential monetary burden to equalize other testamentary distributions. The devise was made in 1928, the life beneficiary died in November 1940, and the remainderman renounced the devise of 151 acres of land in March 1942 (16 months after the termination of the life estate). Of interest is the reasoning of the Missouri Supreme Court in this adversary proceeding. It held:

> ". . . we believe, the defendant [Leo] should not be held to have been put to his election to accept or reject the devise at the testator's death, nor at any time prior to the termination of the life estate. From the death of the testator and until the death of . . . [the life tenant], the time of the contemplated final division was of uncertain remoteness—upon her death, the time of final division should have been anticipated to be near." 171 S.W.2d at 623.

In *Page,* the testator died in 1937 setting up a life estate in trust for his wife with remainder distribution to two daughters with powers of appointment. The life beneficiary died April 14, 1970, survived by both daughters. On April 19, 1970, and April 30, 1970, the daughters respectively executed identical "disclaimers and renunciation" of all their right, title, and interest as remaindermen in the trust. The New Jersey Superior Court in construing the effect of the two disclaimers stated that it had not discovered any ruling that a remain-

derman's renunciation to be effective must occur within a reasonable time after learning about the bequest in the will. It, therefore, held the disclaimers effective.

Of some relevancy is the aforementioned Minnesota statute, Minn.Stat. Ann. § 525.532 Subd. 3, which sets the reasonable time period as commencing with the creation of the interest or at the point where the interest has been indefeasibly fixed both in quality and quantity. Thus a contingent remainderman or a remainderman subject to divestiture can wait until what would ordinarily be the death of the life tenant or beneficiary, which indefeasibly fixes the quality and quantity of the estate, before he would be put to the decision to accept or reject.

Turning to the scholars for guidance on this issue, Page says:

> "If the interest is one which will not take effect in immediate possession, even if accepted, it is said that the remainderman and the like has the entire period during which the particular estate lasts, to determine whether he accepts or renounces." Page, Law of Wills § 49.8 (Bowe-Parker ed. 1962).

It thus appears from the adjudicated cases that remainder interests that are not subject to divestiture should be disclaimed within a reasonable time after the testator's death, and where the remainder interest is subject to divestiture a disclaimer may be filed within a reasonable time after the termination of the life estate. This comports with the Minnesota act on disclaimers previously discussed and also the Model Act to Provide for Disclaimer of Succession to Real and Personal Property proposed by a special committee of the American Bar Association.[9]

9. That Model Act reads as follows:
 "Section 2. Time and Place of Filing. The disclaimer instrument shall be filed within [10] months after the death of the decedent or the donee of the power, as the case may be, or if

the taker of the property or interest is not then finally ascertained or his interest has not become indefeasibly fixed both in quality and in quantity, then not later than [10] months after the event when the taker has become

The appellants maintain, without any refutation by the Commissioner, that all of the authorities who have considered this question have concluded that the time in which a remainder interest subject to divestiture must be disclaimed commences upon the death of the life beneficiary, which in turn allows the remainder interest to be irrevocably fixed not subject to divestment. We have found no contrary authority and think that this is the prevailing common law rule, which also is sound in principle and reason. A remainder subject to divestment does not convey or transfer any actual control or current beneficial interest in property to the remainderman. In Estate of Sanford v. Commissioner, 308 U.S. 39, 42–43, 60 S.Ct. 51, 55, 84 L.Ed. 20 (1939), the Supreme Court in construing an earlier gift tax statute where the Government was unable to determine which construction of the statute would be most advantageous to it from the point of revenue collected said: "When the gift tax was enacted Congress was aware that the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title." In discussing the taxable event of the relinquishment of the power of revocation as distinguished from the transfer of the corpus in trust, the Court said its dominant principle or rationale has been:

". . . that 'taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed' See Corliss v. Bowers, 281 U.S. 376, 378 [50 S.Ct. 336, 74 L.Ed. 916]; Saltonstall v. Saltonstall, *supra*, 261 [276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565 (1928)]; Burnet v. Guggenheim, *supra* 287 [288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748 (1933)] and that a retention of control over the disposition of the trust property, whether for the benefit of the donor or others, renders

finally ascertained and his interest has become indefeasibly fixed both in qual-

the gift incomplete until the power is relinquished whether in life or at death." 308 U.S. at 43, 60 S.Ct. at 56.

In the instant case the remainderman Cargill had really nothing to accept or renounce by way of beneficial ownership or control of the property until he succeeded in outliving the life beneficiary. When that event occurred he was in a position to accept or reject the gratuitous devise and would ordinarily be presumed to have accepted, absent an affirmative disclaimer executed in accordance with local law and in conformity with Treas.Reg. § 25.2511–1(c) respecting disclaimers.

We hold, therefore, that under the prevailing common law and, in particular, the jurisdiction of the State of Minnesota the holder of a vested remainder interest subject to divestiture has a reasonable time within which to renounce or disclaim the remainder interest after the death of the life beneficiary and that an unequivocal disclaimer filed within six months thereof is made within a reasonable time.

We next proceed to the issue raised by the Commissioner that the disclaimer was not unequivocal in that Cargill only intended to file the disclaimer if he was satisfied that his part of the remainder interest would then devolve to his children. The disclaimer once it was filed with the District Court of Hennepin County was clear and unequivocal. Since the trust did not specifically state what would happen in the event of a disclaimer, Cargill was understandably reluctant to disclaim until he knew the consequences of his renunciation. He should therefore not be faulted for desiring to make an intelligent and well considered disclaimer. Usually if a legatee or heir refuses to accept ownership, the results of such a disclaimer would be known for the disclaimed property would pass under other provisions of the will or according to intestate succession. Similarly, a beneficiary under

ity and quantity. 4 Real Property, Probate & Trust J. 658, 664 (1969).

a trust should be entitled to know who would receive the disclaimed assets.

It must be remembered that Cargill had not accepted any income or principal from the trust. He did not as a remainderman receive any benefit from nor did he use any of the trust assets. We do not agree with the Commissioner that the procedure employed constituted "an exercise of dominion and dictation [that] would be virtually an acceptance rather than a renunciation." McCormick v. Engstrom, 119 Kan. 698, 241 P. 685, 687 (1925). Cargill did not in any document direct that the property must pass to his children; he only in effect was hinging his disclaimer on a possibly favorable decision by the District Court of Hennepin County. The court, not Cargill, directed that the property would pass to Cargill's issue under the testamentary trust. The "Disclaimer" itself was unequivocal.

 The Commissioner also argues that Cargill's disclaimer constitutes a taxable event under Treas.Reg. § 25.-2511–1(h)(6) which reads as follows:

"(6) If A is possessed of a vested remainder interest in property, subject to being divested only in the event he should fail to survive one or more individuals or the happening of some other event, an irrevocable assignment of all or any part of his interest would result in a transfer includible for Federal gift tax purposes. See especially paragraph (e) of § 25.-2512–5 or paragraph (e) of § 25.-2512–9, whichever is applicable, for the valuation of an interest of this type."

The answer to this contention is that we are here involved with a disclaimer and not an irrevocable assignment and that Treas.Reg. § 25.2511–1(c) recognizing the validity of disclaimers executed in accordance therewith cannot be obliterated by another subparagraph of the same regulation dealing with an irrevocable assignment of a remainder interest subject to divestiture. These regulations, the same as statutes, must be read

in *pari materia*. Here there was no assignment of Cargill's interest but an actual disclaimer of his interest with his children taking under the will of their grandfather and not as assignees of their father.

 In summary, we agree with the Tax Court that Congress intended to tax gifts in the "broadest and most comprehensive sense . . . regardless of the means or the device used in its accomplishment." H.R.Rep.No.708, 72d Cong., 1st Sess., 27–28 (1932), and with its analysis that a "donee can disclaim a gift without gift tax liability even though the effect of the disclaimer is to pass the property to another person," which of course is a recognition of the law of disclaimer as set forth in Treas. Reg. § 25.2511–1(c). Further, neither the Tax Court, as it found, nor this court is bound by the decision of the Minnesota District Court. Commissioner v. Bosch, *supra*.

However, we do not think that Kathryn S. Fuller, 37 T.C. 147 (1961) relied on by the Tax Court, is controlling in this case. In *Fuller*, the life beneficiary of five-eighths of the income of the testamentary trust received that income for over 25 years before she renounced three-eighths of her five-eighths share. Even though the local Pennsylvania court approved that renunciation, it clearly appears that the life beneficiary in *Fuller* had completely accepted the testamentary bequest, having made use of the same and benefited therefrom for a period of 25 years, and hence was thus not in any position to make a valid disclaimer. We do not agree with the Tax Court that the above distinction is immaterial.

 We believe that comment is in order on the following excerpt of the Tax Court's opinion:

"The exception from taxation for disclaimers was designed to permit a donee to avoid receiving an unwanted gift or bequest within a reasonable time after learning of the gift or be-

quest; it should not be used as an estate planning and tax avoidance tool."

We think in giving full and fair effect to the law of disclaimer that a person's motives are immaterial, and if he has a right to disclaim he may do so for any reason. Persons have a right to and should consider the tax consequences of many of their acts, as taxes take an increasingly larger bite of the income or corpus of individual assets. There appears to be nothing morally reprehensible or legally wrong for a person who has never received the benefit or income from a bequest, to disclaim that bequest, provided of course the disclaimer is done in accordance with the applicable law and the Treasury Regulations implementing that law.

The Tax Court judgment is reversed.