John O. IRVINE and First Trust National Association, a national banking corporation, as co-personal representatives of the Estate of Sally O. Irvine, Appellees,

v.

UNITED STATES of America, Appellant.

No. 89–5616.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1990.

Decided June 10, 1991.

Rehearing and Rehearing En Banc Granted, Opinion and Judgment Vacated Sept. 20, 1991.

---

Jonathan S. Cohen, Washington, D.C., for appellant.

Phillip H. Martin, Minneapolis, Minn., for appellees.

Before McMILLIAN and BOWMAN, Circuit Judges, and BRIGHT, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

The United States (hereinafter the government) appeals from a final order entered in the District Court for the District of Minnesota granting summary judgment in favor of John O. Irvine and First Trust National Association (hereinafter taxpayers) as the personal representatives of the Estate of Sally Ordway Irvine (hereinafter Mrs. Irvine) and directing the government to refund federal gift taxes and interest paid by Mrs. Irvine for the third quarter of 1979 and the third quarter of 1980. For reversal, the government argues the district court erred in holding that Mrs. Irvine's partial disclaimer in 1979 of a remainder interest in a trust created by her grandfather in 1917 was not subject to federal gift tax. For the reasons discussed below, we agree with the government. Accordingly, we reverse the order of the district court and remand the case to the district court for further proceedings.

BACKGROUND FACTS

The underlying facts are not disputed. Mrs. Irvine was a granddaughter of Lucius P. Ordway. In January 1917 Lucius P. Ordway established an irrevocable inter vivos trust. The trust income was to be paid to Ordway's wife, Jessie G. Ordway, and their five children for their lives. The trust also provided that if any of Ordway's children died before the termination of the trust, that child's issue and his or her surviving spouse, as long as he or she remained unmarried, would receive the child's share of the trust income. On the death of the last surviving life beneficiary, the trust corpus was to be distributed to the grandchildren, per capita. If any of the grandchildren died with issue before the termination of the trust, that grandchild's share would be distributed to his or her surviving issue, per stirpes. Mrs. Irvine became aware of her interest in the trust when she turned 21 in 1931.

In June 1979 Katharine G. Ordway, who was Mrs. Irvine's aunt and the last surviv-

ing child of Lucius P. Ordway, died unmarried, and the trust terminated. Twelve Ordway grandchildren, including Mrs. Irvine, were living at the time of Katharine G. Ordway's death. Because one grandchild had died with issue, the trust corpus was to be divided into thirteen shares. On August 17, 1979, about two months after Katharine G. Ordway's death but 48 years after Mrs. Irvine had become aware of her interest in the trust, Mrs. Irvine disclaimed part of her share in the trust corpus. It is undisputed that Mrs. Irvine's partial disclaimer was valid under Minnesota law. Minn.Stat.Ann. § 501.211 (West 1989) (valid disclaimer if filed in Minnesota district court within six months of event which causes disclaimant to be finally ascertained and interest indefeasibly fixed) (repealed by 1989 Minn.Laws, ch. 340, art. I, § 77) (codified at Minn.Stat.Ann. § 501B.86 (West 1990) (within nine months) (effective Jan. 1, 1990)). By virtue of the partial disclaimer, Mrs. Irvine's five children received, per stirpes, the disclaimed portion of her share of the trust corpus.

In November 1979 Mrs. Irvine filed a third quarter gift tax return reporting the disclaimer but stating that the partial disclaimer was not a transfer subject to the gift tax. Following an IRS audit of that return, Mrs. Irvine filed an amended gift tax return in March 1982, reported the partial disclaimer as a taxable transfer, and paid the gift tax due, $7,468,671.00. In April 1982 she paid an additional $2,086,-627.51 in accrued interest on the deficiency. In the meantime, in August 1980, Mrs. Irvine had created a charitable remainder annuity trust and transferred $120,000.00 to the First Trust Co. of St. Paul as trustee. This transfer was a taxable gift of the income interest under the annuity (determined to be $75,337.00 under the applicable Treasury regulations). In November 1980 Mrs. Irvine filed a 1980 third quarter gift tax return reporting the transfer to the trust company as a taxable gift. Because the tax due on the transfer, $15,427.62, was offset by Mrs. Irvine's remaining unified credit against estate and gift taxes, the 1980 third quarter gift tax return showed no gift tax due. In June 1982 the IRS

notified Mrs. Irvine that because the adjustments made to her 1979 third quarter gift tax return on account of the partial disclaimer had reduced the amount of unified credit available to her by $38,000.00, she owed an additional $44,035.90 in gift taxes for the transfer to the annuity trust. In September 1982 Mrs. Irvine paid the additional taxes due and accrued interest ($10,959.51).

In 1984 Mrs. Irvine filed timely claims for refunds of the gift taxes and interest paid. In March 1987 the IRS disallowed the refund claims. Mrs. Irvine died on November 1, 1987.

PROCEEDINGS IN DISTRICT COURT

In February 1988 taxpayers, as the personal representatives of Mrs. Irvine's estate, filed the present action against the government in federal district court seeking a refund of the gift taxes and interest paid. 26 U.S.C. § 7422; 28 U.S.C. § 1346(a)(1). Taxpayers also alleged that the value of the disclaimed remainder interest had been overstated in the 1979 third quarter gift tax return. The parties filed cross-motions for summary judgment. The government argued that the 1979 partial disclaimer was a transfer subject to federal gift tax because it had not been made "within a reasonable time after knowledge of the existence of the transfer" as required by Treasury Regulation § 25.2511–1(c). The government cited in support *Jewett v. Commissioner*, 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982) (*Jewett*). Taxpayers disagreed and argued that the gift tax did not apply because the Ordway trust pre-dated the enactment of the gift tax in 1932 and the gift tax applies prospectively only, 26 U.S.C. § 1000. Taxpayers argued that *Jewett* was distinguishable from the present case because the trust in *Jewett* had been established in 1939, well after the enactment of the gift tax. Taxpayers argued in the alternative that *Jewett* had been wrongly decided. Following a hearing on the cross-motions for summary judgment, the district court held that the 1979 partial disclaimer was not a taxable transfer and granted summary judgment in favor of taxpayers. The

district court agreed with taxpayers' argument that the gift tax could not be applied retroactively to tax pre–1932 transfers. Slip op. at 8. The district court distinguished *Jewett* because that case involved a 1939 transfer and thus did not involve any question of retroactive application. *Id., citing Ordway v. United States*, No. 87–81877–CIV–TES, 1989 WL 108798 (S.D. Fla. Mar. 13, 1989), *rev'd*, 908 F.2d 890 (11th Cir.1990) (*Ordway* ), *cert. denied*, —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1080 (1991).[1] The district court further noted that Mrs. Irvine's remainder interest remained contingent until the death of her aunt in 1979. Slip op. at 9–10. The district court directed the government to refund the gift taxes and interest paid for both the third quarter of 1979 and 1980 because the reduction in the unified credit at issue in the 1980 return had been premised upon the invalidity of the 1979 partial disclaimer. This appeal followed.

## STANDARD OF REVIEW

We review de novo the district court's decision to grant summary judgment. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see, e.g., McCuen v. Polk County*, 893 F.2d 172, 173 (8th Cir.1990). In the present case, the relevant facts are not disputed. The issue on appeal is a legal one—whether Mrs. Irvine's partial disclaimer in 1979 of her remainder interest in a trust created in 1917 was a transfer subject to the federal gift tax.

## APPLICABILITY OF GIFT TAX TO INTEREST CREATED BEFORE 1932

■ "Federal gift tax is imposed 'on the transfer of property by gift.'" *McDonald v. Commissioner*, 853 F.2d 1494, 1499 (8th Cir.1988) (*McDonald* ) (citing 26 U.S.C. § 2501(a)(1)), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). "The scope of this tax is broad, applying

'whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible.'" *McDonald*, 853 F.2d at 1499, *citing* 26 U.S.C. § 2511(a). "A trust beneficiary's refusal to accept ownership of property may constitute an indirect gift to a successor in interest subject to federal gift tax liability." *Jewett*, 455 U.S. at 306, 102 S.Ct. at 1084. "Under Treasury Regulation 26 C.F.R. § 25.2511–1(c), however, such a refusal is not subject to tax if it is effective under local law and made 'within a reasonable time after knowledge of the existence of the transfer.'" *Id.* "The effect of these disclaimer provisions is to collapse the entire transaction into a single transfer from the original owner to the ultimate recipient, thereby ignoring the gift tax consequences of the intermediate disclaimer." *McDonald*, 853 F.2d at 1499, *citing Kennedy v. Commissioner*, 804 F.2d 1332, 1334 (7th Cir.1986).

The government argues that retroactive application of the gift tax is not the real issue because it seeks to impose the gift tax on the 1979 partial disclaimer, not the inter vivos transfer that created the trust in 1917, and that the present case cannot be meaningfully distinguished from *Jewett.* In *Ordway* the Eleventh Circuit agreed with the government's argument and held that the gift tax did apply to the disclaimer of an interest created before its enactment in 1932. 908 F.2d at 893–95. The facts in the present case and *Ordway* are identical, except that the disclaiming individual in *Ordway* was Mrs. Irvine's brother. We agree with the Eleventh Circuit's analysis and accordingly hold that gift tax does apply to the disclaimer of an interest created before 1932.

We agree with the Eleventh Circuit that the fact that the creation of the Ordway trust in 1917 pre-dated the enactment of the federal gift tax in 1932 is not dispositive. *Ordway*, 908 F.2d at 893. Although Congress first passed a federal gift tax in

---

**1.** The district court did not of course have the benefit of the appellate opinion in *Ordway v. United States* at the time it decided the present

case in September 1989. The Eleventh Circuit did not decide *Ordway v. United States* until August 1990.

1924, the Supreme Court held it was unconstitutional because it imposed a tax on transfers made before the date of the act. *See id.* (citations omitted). For this reason, the first valid gift tax statute, passed in 1932, expressly provided that "[t]he tax shall not apply to a transfer made on or before the date of the enactment of this Act." Revenue Act of 1932, ch. 209, § 501(b), 47 Stat. 169. In the present case, as in *Ordway*, the government does not seek to tax the transfers that created the Ordway trust in 1917; it seeks to tax Mrs. Irvine's partial disclaimer in 1979 of her remainder interest in the trust, an indirect transfer which occurred well after both the enactment of the gift tax in 1932 and Treasury Regulation § 25.2511–1(c), which was originally promulgated in 1958.

## TAXABLE TRANSFER

■ Retroactivity is also implicated in another aspect of the present case. As promulgated in 1958, Treasury Regulation § 25.2511–1(c) provided in part that "a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocal and effective under the local law." Subsequently, in 1976, Congress enacted § 2518 of the Internal Revenue Code, providing that a "qualified" disclaimer of any interest in property would not be treated as a taxable transfer but "as if the interest had never been transferred to [the disclaimant at all]," and replacing the "reasonable time" requirement with the requirement that "qualified" disclaimers must be made within nine months of the later of either the transfer creating the disclaimed interest or the disclaimant's twenty-first birthday. *See* Tax Reform Act of 1976, Pub.L. No. 94–455, § 2009(b)(1), 90 Stat. 1893 (*codified at* 26 U.S.C. § 2518(b)). However, the "qualified" disclaimer provision and the specific time limits apply only to interests created after December 31, 1976, the effective date of the act. *See* Treasury Regulation § 25.2518–1(a). Treasury Regulation § 25.2511–1(c) was amended in 1986, and § 25.2511–1(c)(2) (emphasis added) now provides in part that

[i]n the case of *taxable transfers* creating an interest in the person disclaiming made before January 1, 1977, ... a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocal and effective under local law.

Taxpayers argue § 25.2511–1(c)(2) cannot apply to Mrs. Irvine's partial disclaimer because her remainder interest was not created by a "taxable transfer." Taxpayers argue that the creation of the Ordway trust could not have been a "taxable transfer" because, as noted above, there was no gift tax when the Ordway trust was created in 1917. We disagree because Treasury Regulation § 25.2518–2(c)(3) provides that "[w]ith respect to inter vivos transfers, a taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift." Thus, a "taxable transfer" occurs whenever there is " 'any transaction in which an interest in property is gratuitously passed or conferred upon another,' even if that transaction was not subject to the gift tax." *Ordway*, 908 F.2d at 895, *citing* 26 C.F.R. § 25.2511(c)(1). We agree with this interpretation and hold that the term "taxable transfer" in Treasury Regulation § 25.2511–1(c)(2) can refer to a transfer made before the enactment of the gift tax.

## DISCLAIMER WITHIN A REASONABLE TIME

■ Because the interest disclaimed by Mrs. Irvine was created by a taxable transfer before January 1, 1977, the disclaimer is subject to gift tax unless it was valid under state law and was "made within a reasonable time after knowledge of the existence of the transfer." It is undisputed that the disclaimer was valid under Minnesota law. What is disputed is whether the disclaimer was made within a reasonable time. This issue is a familiar one. *See Cottrell v. Commissioner,* 628 F.2d 1127 (8th Cir.1980) (banc) (*Cottrell*); *Keinath v. Commissioner,* 480 F.2d 57 (8th Cir.1973) (*Keinath*), *overruled by Jewett v. Commissioner,* 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982); *cf. McDonald,* 853 F.2d

1494 (joint tenancy). The government argues that the disclaimer was not "made within a reasonable time after knowledge of the existence of the transfer" because Mrs. Irvine did not disclaim her remainder interest until 1979, some 48 years after she learned of its existence. The government argues that, under *Jewett*, the "reasonable time" during which Mrs. Irvine could have made a disclaimer began to run in 1931, when Mrs. Irvine learned of her remainder interest, and not in 1979, when her interest vested upon the death of the last life beneficiary. We agree.

In *Jewett* the taxpayer's grandmother died in 1939, leaving the bulk of her substantial estate in a testamentary trust. Under the terms of the trust, the trust income was payable to her husband for life and thereafter to the taxpayer's parents. Upon the death of the surviving parent, the trust was to be divided equally among her grandchildren then living or, if any grandchild had died, to that grandchild's child or children. In 1972, some 33 years after the creation of the trust and when the taxpayer's mother, who was one of the life beneficiaries, was still alive, the taxpayer disclaimed his interest in the trust. The taxpayer argued that the word "transfer" in the Treasury regulation referred to the vesting or distribution of the property and that the "reasonable time" during which he could make a disclaimer did not begin to run until that interest vested upon the death of the last surviving life tenant. *See Keinath*, 480 F.2d at 63–64 (holding that time within which disclaimer of vested remainder interest subject to divestiture must be filed begins to run when interest becomes indefeasibly fixed both in quality and quantity, that is, after death of life beneficiary, not testator). The Supreme Court rejected the taxpayer's interpretation and held that the relevant "transfer" referred to in the regulation occurred when the disclaimed interest was created and not later when that interest vested. 455 U.S. at 312, 318–19, 102 S.Ct. at 1087, 1090–91. The Court held that the taxpayer's disclaimer was not made within a reasonable time of either the creation of the interest, 33 years before, or when he reached the age of majority, 24 years before. *Id.* at 318, 102 S.Ct. at 1090.

Thus, under *Jewett*, the "reasonable time" during which Mrs. Irvine could have made a disclaimer began to run, at the latest, in 1931 when she became aware of her remainder interest and when she turned 21. Mrs. Irvine's partial disclaimer in 1979, some 48 years later, was clearly too late. This is twice as long as the period which the Supreme Court rejected in *Jewett*. 455 U.S. at 318, 102 S.Ct. at 1090 (disclaimer made 24 years after age of majority); *see Ordway*, 908 F.2d at 895 (disclaimer made 38 years after knowledge of transfer and 36 years after age of majority).

The district court also based its decision in part on the fact that Mrs. Irvine's remainder interest remained contingent until the death of her aunt, the last life beneficiary, in 1979. However, *Jewett* rejected the argument that "the disclaimer of a contingent remainder is not a taxable event." 455 U.S. at 317–18, 102 S.Ct. at 1090–91 (comparing disclaimer of contingent remainder to exercise of general power of appointment, which is a taxable transfer); *see Ordway*, 908 F.2d at 893 n. 4.

RETROACTIVE APPLICATION OF *JEWETT*

■ Having concluded that the disclaimer of an interest created before the gift tax was enacted is a taxable transfer and that the disclaimer was not made "within a reasonable time," we now face another retroactivity issue, that is, whether it is appropriate to apply the "reasonable time" rule in *Jewett*, which was decided in 1982, to a partial disclaimer made in 1979. In 1979 *Keinath*, which was decided in 1973 and in which the government did not seek certiorari, was the rule in the Eighth Circuit. *Keinath* held that the time within which the disclaimer must be filed begins to run when the remainder interest becomes "indefeasibly fixed in both quality and quantity" and that remainder interests subject to divestment did not become "indefeasibly fixed" until the death of the life beneficiary. 480 F.2d at 63. Thus, under *Keinath*, a disclaimer could be filed within a reasonable time of the death of the life beneficiary. *Id.* In the present case, the

last life beneficiary died in June 1979 and Mrs. Irvine filed the partial disclaimer only two months later in August 1979, which was clearly "within a reasonable time" under the *Keinath* rule. In 1980 we affirmed *Keinath* en banc in *Cottrell,* 628 F.2d 1127. It was not until the decision in *Jewett,* some two years later, that the disclaimer rule was changed and *Keinath* was overruled.

As in *Ordway,* 908 F.2d at 896, neither the government nor taxpayers addressed this retroactivity issue on appeal in the present case. In *Ordway* the court decided that because nonretroactivity was an affirmative defense, the taxpayers' failure to raise that defense constituted a waiver and applied *Jewett* retroactively. *Id. But see id.* at 896–97 (Gibson, J., dissenting) (unfair to apply *Jewett* retroactively to 1979 disclaimer when to do so means taxpayer "will suffer severe tax consequences for failing to do something at a time when the law provided him with no notice that he needed to act"). We also decline to reach this issue.[2]

Accordingly, the order of the district court is reversed and the case is remanded to the district court for further proceedings on the valuation issue.

**2.** It does seem unfair to apply a rule announced in 1982 to a disclaimer which was valid under the applicable law when it was made in 1979. However, to the extent that the unfairness is due to the fact that at the time the new rule was announced, it was already too late to act, we note that a similar retroactivity argument was rejected by the Supreme Court in *Jewett v. Commissioner,* 455 U.S. 305, 317, 102 S.Ct. 1082, 1090, 71 L.Ed.2d 170 (1982) (*Jewett*). In *Jewett* the taxpayer argued that it was unfair to apply a 1958 regulation "retroactively" to an interest that had been created in 1939. The taxpayer argued that at the time the regulation was promulgated, it was already too late, at least according to the government, to disclaim the interest. The Court held there was no retroactivity problem because the taxpayer's argument was "based on an assumption that [he] had a 'right' to renounce the interest without tax consequences that was 'taken away' by the 1958 Regulation," but the taxpayer "never had such a right." *Id.* The Court further noted that the regulation had been adopted "well in advance" of the disclaimers.

In the present case, the partial disclaimer was valid under the applicable law in effect at that time; however, the Supreme Court subsequently held in *Jewett* that the applicable law, that is,

BRIGHT, Senior Circuit Judge, concurring in the result.

I agree that Mrs. Irvine's disclaimer was not valid for federal gift tax purposes. Very simply put, the 1917 gift from Lucius P. Ordway in trust to his wife and heirs constituted a taxable transfer as that term is defined under the applicable gift tax laws and regulations. *See* Treas.Reg. § 25.2518–2(c)(3) (1990). "With respect to inter vivos transfers, a taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift." *Id.* Thus, "taxable transfer", as used in the regulation, merely describes a class of interests to which the regulation applies based upon the nature of the transactions creating them. It is not meant to literally refer solely to transfers in which gift taxes were assessed. Therefore, under Treas.Reg. § 25.2511–1(c)(2) (1990),[1] Mrs. Irvine's remainder interest was subject to the federal gift tax unless her disclaimer, as to the portion here in question, was timely.

Pursuant to *Jewett v. Commissioner,* 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982), the time period for Mrs. Irvine to

this court's decision in *Keinath v. Commissioner,* 480 F.2d 57 (8th Cir.1973) (*Keinath* ), was incorrect. This is the unfortunate but unavoidable, and in the present case, admittedly costly, consequence of our hierarchical court system. This court is an intermediate appellate court and our decisions are subject to review and to being overruled by the Supreme Court. *Compare Poinier v. Commissioner,* 858 F.2d 917, 918–19 (3d Cir.1988) (sister's disclaimer held untimely under *Jewett* ), *cert. denied,* 490 U.S. 1019, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989), *with Cottrell v. Commissioner,* 628 F.2d 1127, 1129 (8th Cir.1980) (banc) (sister's disclaimer held timely under *Keinath;* same family involved in *Poinier v. Commissioner* ).

**1.** Treas.Reg. § 25.2511–1(c)(2) (1990) reads in pertinent part:

In the case of taxable transfers creating an interest in the person disclaiming made before January 1, 1977, where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right completely and unqualifiedly to refuse to accept ownership of property transferred from a decedent ..., a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after

disclaim her interest began to run, at the latest, in 1931 when she was aware of her remainder interest and had reached the age of majority. Clearly, Mrs. Irvine's partial disclaimer, almost fifty years later, was not made within a reasonable time. *See Jewett*, 455 U.S. at 318, 102 S.Ct. at 1090 (rejecting disclaimer made twenty-four years after reaching age of majority for federal gift tax purposes). Such a late disclaimer will not operate to avoid the application of the federal gift tax laws.

BOWMAN, Circuit Judge, dissenting.

I respectfully dissent. The question on which this case turns is whether Sally Irvine's 1979 partial disclaimer of her contingent remainder interest in an irrevocable trust created in 1917 (when there was no federal gift tax) is a transfer subject to the federal gift tax. The opinion of the Court holds that it is, based on the application of Treasury Regulation § 25.2511–1(c)(2), which provides:

> [i]n the case of *taxable transfers* creating an interest in the person disclaiming made before January 1, 1977 ... a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocal and effective under the local law. There can be no refusal of ownership of property after its acceptance.

Treas.Reg. § 25.2511–1(c)(2) (as amended in 1986) (emphasis added). This regulation reflects the unassailable premise that a disclaimer is not subject to the federal gift tax unless the transfer creating the interest disclaimed was a "taxable transfer" for purposes of the Gift Tax Act. I note without surprise that the Treasury Department

has not promulgated any regulation dealing with the refusal to accept ownership of interests created by "nontaxable transfers."

The transfer that created Mrs. Irvine's contingent remainder interest is the irrevocable inter vivos trust created by Lucius P. Ordway in 1917. If the establishment of this trust is indeed a "taxable transfer," even though in 1917 the federal gift tax had not yet been enacted, then Mrs. Irvine's disclaimer of her contingent remainder interest created by the trust would be subject to the federal gift tax unless her disclaimer was timely.[1] But if the creation of her interest by the 1917 Ordway trust is not a "taxable transfer," then the interest validly disclaimed by Mrs. Irvine under Minnesota law passes to her five children unencumbered by the federal gift tax.

It seems fundamental to me that for a transfer to be taxable there must be an applicable tax in existence when the transfer is made. No such federal tax existed on January 16, 1917 when Lucius P. Ordway irrevocably transferred assets to the trustees of the Ordway trust and Mrs. Irvine's interest was created. Moreover, fifteen years later when the Gift Tax Act of 1932 was enacted, Congress expressed its intention not to apply the tax retroactively. Section 501(b) of the Act states: "The tax shall not apply to a transfer made on or before the date of enactment of this Act [June 6, 1932]." Revenue Act of 1932 § 501(b), 47 Stat. 169, 245. This prohibition against retroactive application of the tax to pre-Act gifts has been continued throughout revisions of the Gift Tax Act and is reflected in the current Code in the section governing computation of the tax. 26 U.S.C. § 2502 (1988) (the tax is comput-

---

knowledge of the existence of the transfer.... There can be no refusal of ownership of property after its acceptance. In the absence of the facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property.

Although this regulation read differently at the time Mrs. Irvine made her disclaimer, absent a contrary indication from the Secretary of the Treasury, tax regulations apply retroactively to the year of the Tax Code they interpret, in this

case—1976. *See* 26 U.S.C.A. § 7805(b) (West Supp.1991).

1. The issue of timeliness is the subject of *Jewett v. Commissioner*, 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982). *Jewett* deals with the timeliness of the disclaimer of an interest created *after* the effective date of the federal gift tax and thus does not speak to the precise issue we confront here. It was beyond dispute in *Jewett* that the transfer creating an interest in the person disclaiming was a taxable transfer.

ed upon the aggregate sum of taxable gifts made throughout the donor's life during periods following June 6, 1932). "Congress has been careful to avoid any taint of retroactivity in connection with the 1932 [gift] tax and the subsequent amendments to the tax." C. Lowndes, R. Kramer, J. McCord, *Federal Estate and Gift Taxes* 643 (3d ed. 1974).

However, where Congress has feared to tread the Eleventh Circuit has rushed in with its stunning determination that "the 1917 gift [of Lucius P. Ordway] was a taxable transfer." *Ordway v. United States,* 908 F.2d 890, 895 (11th Cir.1990), *petition for cert. filed,* No. 90–1503 (Mar. 27, 1991). The *Ordway* decision gives a new definition to the term "taxable transfer" by referring to section 25.2518–2(c)(3) of the regulations, which provides that "[w]ith respect to inter vivos transfers, a taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift." Treas. Reg. § 25.2518–2(c)(3). Based on that language, the *Ordway* decision concludes that "a taxable transfer occurs whenever there happens 'any transaction in which an interest in property is gratuitously passed or conferred upon another,' 26 C.F.R. § 25.2511(c)(1) [sic], even if that transaction was not subject to the gift tax." 908 F.2d at 895.

The opinion of the Court in the case before us agrees with the *Ordway* court's interpretation of Treasury Regulation § 25.2518–2(c)(3) and holds, *ante* at 347, that "the term 'taxable transfer' in Treasury Regulation § 25.2511–1(c)(2) can refer to a transfer made before the enactment of the gift tax." I cannot accept that startling conclusion. The Court's reliance on a single sentence from a regulation explicating a section of the Code that is clearly inapplicable to the facts here [2] is inappropriate and misplaced. Moreover, the sentence is taken out of context to support an expanded and illogical definition of the

term "taxable transfer" to include a pre-Act transfer. This distorted interpretation is evident when the sentence is read in context with the sentence that immediately follows it: "[A] taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift. Thus, gifts qualifying for the gift tax annual exclusion under section 2503(b) are regarded as taxable transfers...." Treas. Reg. 25.2518–2(c)(3). Clearly, the sentence upon which the Eleventh Circuit and now our Court mistakenly rely is concerned with the $10,000 annual exclusion on gifts and has absolutely nothing to do with pre-Act transfers. There is a definitive difference between a taxable transfer that qualifies for the annual exclusion and on which a gift tax therefore is not imposed, such as an annual $10,000 check to a favorite nephew, and a transfer as to which the gift tax is not even applicable, such as a transfer pursuant to an obligation created in an antenuptial agreement executed in 1931 between a man and woman married later that year. *See Commissioner v. Copley's Estate,* 194 F.2d 364, 367 (7th Cir.1952) (holding that transfers made in 1936 and 1944 pursuant to the 1931 agreement were not taxable because "[t]o hold, as the Commissioner would have us do ... would require a retroactive application of [the gift tax], which we think is not permissible. See Sec. 501(b) of the Revenue Act of 1932."). The creation of the Ordway trust in 1917 falls into the same category as the transfers pursuant to the 1931 antenuptial agreement in *Copley's Estate;* it is a transfer as to which the federal gift tax is inapplicable—and even more cleanly and clearly so than the post–1932 transfers pursuant to the 1931 agreement in *Copley's Estate.*

In light of the consistently expressed intent of Congress not to apply the gift tax retroactively to transfers made prior to June 6, 1932, I cannot join in the Court's holding that "the term 'taxable transfer' in Treasury Regulation § 25.2511–1(c)(2) can refer to a transfer made before the enactment of the gift tax." *Ante* at 7. Logic,

---

2. Mrs. Irvine's disclaimer clearly is not governed by section 2518 of the Code. The interest she disclaims was created by a transfer in the year 1917. Section 2518 applies only to the

disclaimer of interests created by taxable transfers made after December 31, 1976. Treas.Reg. § 25.2518–1(a)(1).

history,[3] the expressed intent of Congress, and a straightforward reading of the regulations all join here to compel the opposite conclusion. Because the contingent remainder interest that Mrs. Irvine disclaimed in 1979 was created in 1917, it never was subject to the federal gift tax and therefore was never a "taxable transfer" for federal gift tax purposes. Once the pretense that by some mysterious alchemy the treasury regulations have transformed the non-taxable 1917 transfer into a taxable event is stripped away, the government is left without any authority (other than *Ordway*, which cannot withstand critical analysis) to support its position.

As the federal gift tax simply does not apply here, I forego discussion of the issues concerning the timeliness of the disclaimer and the retroactive application of *Jewett.* If the gift tax is inapplicable, as I believe it plainly is, then these are non-issues.

For the reasons stated, I would affirm the decision of the District Court in favor of the taxpayers.

### ORDER

Sept. 20, 1991

Appellees' petition for rehearing with suggestion for rehearing en banc is granted. The opinion and judgment of this court filed June 10, 1991, are hereby vacated. The parties may file supplemental briefs not to exceed fifteen pages within thirty days from the date of this order. This case will be set down for en banc rehearing on Monday, January 6, 1992, at 9:00 a.m. in St. Louis, Missouri.

---

**3.** The Supreme Court struck down, on Due Process grounds, the original federal gift tax (enacted in 1924) to the extent it attempted to tax transfers made prior to its effective date. *See Blodgett v. Holden,* 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927).